## JAMES ALBERT CLARK v. THE STATE.

No. 23844. Delivered February 25, 1948.

George E. Wyse and Samuel Amster, both of Austin, for appellant.

Ernest S. Goens, State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The offense is murder and the punishment assessed is confinement in the state penitentiary for life.

The record reflects that on the night of September 11, 1946, appellant whipped his five-year-old step-son inflicting severe injuries upon his person from the effects of which he died on the afternoon of the next day.

Appellant brings forward thirty-six bills of exception upon which he relies for a reversal of the judgment of conviction. By Bill of Exception No. 1 he complains of the action of the trial court in declining to sustain his motion to quash the indictment, based on the ground that it failed to charge the means and the instrument used in the commission of the alleged offense. While the indictment fails to allege the instrument with which the injuries were inflicted which resulted in the death of the deceased, it does charge that he struck and beat the deceased with an instrument, the exact nature of which is to the grand jurors unknown. This, under the decisions of this Court, is deemed sufficient. See Walker v. State, 94 Tex. Cr. R. 414; and Bookman v. State, 112 Tex. Cr. R. 233. While ordinarily where the indictment charges that the manner or means and instrument which was used in the commission of the offense is not known, it is incumbent on the State to prove that the grand jury made diligent inquiry to ascertain the means or character of the instrument used in the commission of the alleged offense, but where the evidence adduced upon the trial leaves uncertain the means used or the precise cause of the death of the deceased

but creates no doubt that the deceased was killed by the acts of the accused, it is sufficiently proved. In the instant case, there is nothing in the testimony indicating that the grand jury knew or by the exercise of reasonable diligence could have discovered the exact instrument used by appellant in killing the deceased. Not a witness who testified knew anything of the character of the instrument used by the accused. Even his half-sister, who occupied the adjoining room, who heard the licks struck, heard the boy crying and begging the appellant to cease whipping him, did not know whether he struck him with a stick or a strap. Nor did the next-door neighbors, who heard the licks struck, heard the boy crying and begging his step-father to cease whipping him, know whether appellant had a stick, rope, or strap with which he did the whipping, beating and striking of the little child. In the absence of an issue having been raised by the evidence and it being uncertain as to the kind or character of instrument used to inflict the fatal wounds, it was not necessary for the court to submit any instructions thereon to the jury. See Forest v. State, 300 S. W. 51; Mitchell v. State, 111 Tex. Cr. R. 101; and Bookman v. State, 112 Tex. Cr. R. 233.

Appellant next contends that the evidence is insufficient to show that the deceased came to his death by the act, agency or procurement of the defendant. We are not in agreement with his contention. Susie Leon Carr, among other things, testified that she lived in an adjoining room of the house occupied by appellant and deceased; that on the night in question she heard appellant whip the deceased and heard him remark, "You little black s-- of a b----, you are not going to bed until you learn to count," and heard him say that he was going to kill him and then whipped the child at intervals up to 2 A. M. Jesse Lee Perkins testified that on the night in question he was in an adjoining room and heard appellant whip the child at intervals until 2 A. M.; that he heard the child say, "Daddy, can I go to bed now?" to which appellant replied, "No!" A short time later he heard the child ask appellant again if he could go to bed, to which he again replied in the negative; that finally he, the witness, heard a noise that sounded like the child, Oscar Dudley, falling and that was the last he heard of him that night. Dr. Jaehne testified that about 2:30 P. M. on September 13th, 1946, he made an examination of the body of Dudley Clark at Brackenridge Hospital; that there were from 200 to 250 marks of violence all over his body; that there were bruises of considerable extent involving the entire abdomen; that he found a hematoma about the size of a half-orange under the scalp;

that he found a hemorrhage beginning at the base of the brain and extending over the right lateral and posterior surface and that was the cause of death. There were a number of fresh abrasions on his body which appeared to have been inflicted by some blunt, round instrument. One bruise larger than a man's hand extended across the abdomen. The wound on the head appeared to have been inflicted with something blunt. The basis for the doctor's conclusion that the wound on the head was caused by a blow rather than a fall, is as follows: "* * * that the wound was extensive. In the case of a fall, one would look for a spot wound, and the very fact that it was behind the ear". We think that the facts and circumstances proven are sufficient to establish the corpus delicti.

Bill of Exception No. 3 is without merit.

Bills of Exception Nos. 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14 are all in question and answer form without any certificates by the court stating therein that it was necessary that they be in such form. Therefore, the same cannot be considered by this Court. See Millican v. State, 143 Tex. Cr. R. 115 (157 S. W. (2d) 357; Mallett v. State, 143 Tex. Cr. R. 424 (158 S. W. (2d) 792) ; Green v. State, 144 Tex. Cr. R. 40 (160 S. W. (2d) 940) ; Stroud v. State, 145 Tex. Cr. R. 264 (167 S. W. (2d) 52.)

Testimony to the effect that on previous occasions the appellant had whipped the child severely was admissible on the issue of malice and ill will on the part of appellant towards the child. See Betts v. State, 57 Tex. Cr. R. 389.

By Bills of Exceptions Nos. 15 and 16 he complains because the court declined to give his special requested charges to the effect that before a person may be convicted of criminal homicide the corpus delicti must be proved. To prove the corpus delicti in this case the State must show beyond a reasonable doubt that the boy, Dudley Clark, came to his death by some criminal means.

The court in his main charge instructed the jury that if they believed from all the evidence beyond a reasonable doubt that the defendant did unlawfully and voluntarily kill the said Dudley Clark by beating him, etc., then to find him guilty of murder and unless they so believed from the evidence beyond a reasonable doubt to acquit him. This, we think, was sufficient since the jury was required to find beyond a reasonable doubt that appellant inflicted the wounds that caused death. The suf-

ficiency of the evidence to establish the corpus delicti is generally a question of law for determination by the court.

Bill of Exception No. 34 complains of the following argument by the district attorney: "That police officer wasn't lying to you, gentlemen, when he told you about finding this bloody spot on that broom handle." The bill then recites that the only officer who testified was Policeman Rampy and that on direct examination he testified there was blood on a broomstick, presumably in the room where the child was beaten. On objection, it states, the court withdrew this *evidence* from the jury and instructed them to disregard any statements regarding any blood found on the broomstick made by such officer, and the defendant objected to the reference "* * * to a bloody spot on 'this broom handle' for the reason that such argument is outside of the evidence in the case, * * * and is highly inflammatory and prejudicial and for the further reason that no broomstick had ever been admitted in evidence, and any reference to a broomstick in argument is outside of the evidence and is improper argument."

The approval of this bill by the court presents a difficulty which the record itself does not justify. Whatever evidence in regard to the broomstick was excluded is not revealed, and should not be in the record. We copy from the statement of facts (page 21) the following: "I found two bloody bed sheets, a pair of child's underpants that were bloody, and a stick. The stick you have shown me is the one I found there behind a trunk on the floor of the bedroom. There was a spot of blood about 18 inches in diameter on the sheet." From the foregoing it appears that a stick was introduced in evidence and the fact that it was referred to as a "broomstick" presents no difficulty. We note, too, that on cross-examination the defendant elicited the following statement relative to it. "I am not a chemist. I have not tested this stick for blood on it." It is thus shown that the stick was in evidence.

When we review the entire record, however, we find one of the most unmerciful, brutal beatings of a small child that an adult could possibly inflict. It extended over a long period of time and resulted in his death. The child died from the wounds and it is inconceivable that such could be done without bringing blood. There was an eighteen inch spot of blood on a sheet. A little on a stick could not add to the horrible scene following this brutal murder. No jury could listen to all of the evidence in the case and then have their minds "inflamed" by the attorney's reference to a spot of blood on a broomstick. The ob-

jection, therefore, appears to relate to a matter so insignificant as to attract but little, if any, attention of the jury under all of the circumstances of the case, which may be considered in appraising the harmful effect of the attorney's argument.

The objection to the argument could have no efficacy except that it was prejudicial and inflamed the minds of the jury. Unless there is some reason to believe that it did so, or might have done so, then the argument could not have violated the rule. When we consider all of the facts of the case and realize, as we must, that a normal verdict under the evidence found in the record would be the extreme penalty, then it is perfectly evident that the jury's mind was not inflamed by this argument.

Finding no reversible error, the judgment of the trial court is affirmed.