Joseph Michael DEPAUW, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–81–0217–CR.

Court of Appeals of Texas, Amarillo.

Feb. 15, 1983.

Rehearing Denied May 5, 1983.

Floyd D. Holder, Jr., Stephen E. Boatwright, Lubbock, for appellant.

John T. Montford, Dist. Atty., Jim B. Darnell, Asst. Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Joseph Michael Depauw brings this appeal from his conviction for the offense of murder. Tex.Penal Code Ann. § 19.02(a)(2) (Vernon 1974). The punishment, assessed by the jury, was sixty-five years confinement in the Texas Department of Corrections. Appellant asserts eight grounds of alleged error. We affirm the judgment of conviction.

On October 5, 1979, Olan K. Anderson was found dead, lying on the floor of the shop he owned. A pool of blood surrounded his head and it appeared that he had been assaulted. An autopsy was conducted on the body and the pathologist testified that Anderson had died from a blow to the left frontal side of the head by a blunt instrument. The pathologist further testified that the fatal blow was delivered with a "severe and tremendous force." The evidence showed that Anderson's left ear was almost completely severed and that he had suffered a number of blows to the chest as well.

Anderson had spent at least part of the afternoon of October 4, 1979 at the Lubbock Lounge, a tavern located a short distance from Anderson's shop. Anderson was joined by Herman Lee Watts and appellant, and the three men shot pool and drank beer throughout the time they were at the tavern. Anderson left the tavern sometime in the early evening and then returned a few hours later. Francis Hill, the barmaid, testified that Anderson had arrived back at the tavern and then left again around 40 minutes later. When Anderson left the tavern for the final time that evening, he was accompanied by appellant and Watts. The three men proceeded to Anderson's shop. When they arrived at the shop Watts remained behind in the car while Anderson and appellant went inside.

According to appellant's testimony at trial, when Anderson and appellant were inside the shop, Anderson started to make sexual advances toward the appellant. Appellant further testified that when he resisted the advance, Anderson started to strike at him with his fists. At this point appellant became enraged and started striking and kicking Anderson. Appellant stated that he repeatedly kicked Anderson in the chest and in the head. After he had finished kicking Anderson, appellant left the shop. Appellant testified that when he left the shop that night, Anderson was lying on the floor, mumbling incoherently to himself, his head covered with blood. According to appellant, Anderson looked like he had suffered an "ass whipping."

When Anderson's brother and an employee went to the shop the next morning they found Anderson lying dead in a pool of blood. They called the police who proceeded to investigate the death. After almost four months of investigation, the grand jury returned an indictment against appellant, on February 7, 1980. The indictment charged that appellant "did then and there intending to cause serious bodily injury to an individual, Olan K. Anderson, commit an act clearly dangerous to human life, to-wit: by striking the head of the said Olan K. Anderson with a blunt instrument, the exact nature and description of which is unknown to the grand jurors, thereby causing the death of said individual." At his arraignment, appellant pled not guilty to the charge.

The case proceeded to trial and at the conclusion of the evidence, the court instructed the jury on the offenses of murder

and voluntary manslaughter. The jury found the appellant guilty of murder. At the punishment stage of the trial, the jury assessed punishment at 65 years confinement in the Texas Department of Corrections.

Appellant raises eight grounds of error in this appeal. In his first ground, appellant asserts that the trial court erred in overruling his motion to quash the indictment because the indictment failed to allege that the appellant committed "an act clearly dangerous to human life," an essential element of the offense of murder under Tex. Penal Code Ann. § 19.02(a)(2) (Vernon 1974). Appellant complains in his second ground of error that the trial court erred in denying his motion for a directed verdict since the evidence adduced at trial was allegedly insufficient to prove beyond a reasonable doubt that appellant committed an "act clearly dangerous to human life." In his third ground, appellant contends that the trial court erred in failing to submit an instruction to the jury defining the term "act clearly dangerous to human life." Appellant's fourth ground of error charges that the trial court erred when it submitted an instruction to the jury on "causation, over appellant's objection, because this instruction allegedly had the effect of eliminating this essential element from the charge."

In his fifth ground of error, appellant asserts that the trial court erred in denying appellant's motion for directed verdict because the evidence was allegedly insufficient to prove beyond a reasonable doubt the State's allegation, contained in the indictment, that the exact nature and description of the blunt instrument which caused Anderson's death was "unknown to the grand jurors." Appellant further contends in his sixth ground of error that the trial court erred when it failed to instruct the jury on the law applicable to the State's allegation of "unknown to the grand jurors." Appellant's seventh ground of error argues that the trial court erred in submitting a charge on voluntary manslaughter on a theory of murder not alleged in the indictment.

Finally, in his eighth ground of error, appellant contends that the trial court erred in overruling appellant's motions for mistrial during the State's jury argument because the prosecutor's arguments were allegedly highly inflammatory, prejudicial and calculated to deny the appellant a fair and impartial trial. For the reasons explained below, we overrule appellant's grounds of error and affirm in all respects the judgment of the trial court.

Appellant argues in his first point of error that the trial court erred in overruling appellant's motion to quash the indictment because the indictment's language was both legally and factually insufficient to allege an essential element under the offense of murder, Tex.Penal Code Ann. § 19.02(a)(2) (Vernon 1974). Specifically, appellant contends that the indictment failed to allege that the appellant committed an "act clearly dangerous to human life."

Under Tex.Penal Code Ann. § 19.02, the offense of murder is defined as follows:

§ 19.02 Murder

(a) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony other than voluntary or involuntary manslaughter and in the course of and in furtherance of the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

The indictment brought against appellant tracks the statutory language of § 19.-02(a)(2). Appellant was charged with "intending to cause serious bodily injury to [the deceased] ... [by] commit[ing] an act clearly dangerous to human life, to-wit: by striking the head of [the deceased] with a blunt instrument, the exact nature and description of which is unknown to the grand jurors, thereby causing the death of [the

deceased]." Appellant asserts that the act alleged in the indictment, i.e. striking the head of the deceased with a blunt instrument, was not an act clearly dangerous to human life and therefore the indictment failed to allege this essential element of § 19.02(a)(2).

We first note that the Code does not define "an act clearly dangerous to human life." We have found no precedent which holds one way or the other on the question of whether the act of striking another person's head with a blunt instrument is an act clearly dangerous to human life. Appellee cites *Jackson v. State,* 516 S.W.2d 167 (Tex. Cr.App.1974); *Gentry v. State,* 172 Tex. Cr.R. 345, 356 S.W.2d 793 (1962); *Moree v. State,* 147 Tex.Cr.R. 564, 183 S.W.2d 166 (1944); and *Walker v. State,* 94 Tex.Cr.R. 414, 251 S.W. 235 (1923) for the proposition that "where it is doubtful how death was caused, it is sufficient to charge that it was done by some means unknown to the grand jury." Those cases all deal with the requirements necessary to charge murder under § 19.02(a)(1) and its predecessors.

However, as appellant correctly points out, the elements required to be shown under § 19.02(a)(1) are different from the elements required to be shown under § 19.-02(a)(2). Section 19.02(a)(1) requires the State to show that the accused intended to and in fact caused the death of the deceased. Section 19.02(a)(2) does not require the State to show that the accused intended to cause the death of the deceased. Instead § 19.02(a)(2) only requires the State to prove that the accused intended to cause serious bodily injury to the deceased. On the other hand, § 19.02(a)(2) imposes a requirement upon the State which § 19.-02(a)(1) does not, namely that the State must allege and prove that the accused committed an act which is clearly dangerous to human life. Therefore, we believe, the cases cited by appellee which hold that an indictment is valid even though the means of the murder are not alleged in the indictment are inapposite to a § 19.02(a)(2) case.

As we pointed out above, the State alleged in its indictment that the appellant committed an act which it claimed was clearly dangerous to human life, namely striking the deceased's head with a blunt instrument. We must determine whether the act alleged by the State is clearly dangerous to human life.

■ The State is not required to plead evidence in the indictment; it need only allege the facts which are essential to giving the accused notice of the charge against him. *Thomas v. State,* 621 S.W.2d 158, 161 (Tex.Cr.App.1980), opinion on rehearing; *Phillips v. State,* 597 S.W.2d 929 (Tex.Cr. App.1980).

■ In this case, the State's charge does give the appellant notice of the act which he is accused of committing. He was on notice that the State was accusing him of striking the deceased's head with a blunt instrument. As long as the act alleged by the State is within the range of acts which a jury could reasonably conclude were clearly dangerous to human life, the State will have sufficiently alleged this essential element of § 19.02(a)(2). See *Bowen v. State,* 640 S.W.2d 929 (Tex.Cr.App.1982). The act of striking another's head with a blunt instrument is the type of act which a jury could arguably conclude was clearly dangerous to human life. To require the State to allege the act with greater specificity would only be to require the State to plead its evidence in the indictment. Appellant's first point of error is overruled.

■ In his second ground of error, appellant contends that the trial court erred in denying his motion for directed verdict because the State allegedly presented insufficient evidence to establish that the appellant in fact committed an act clearly dangerous to human life. When the sufficiency of the evidence is challenged, the evidence is to be viewed in the light most favorable to the verdict. The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony. Further, a jury is entitled to accept one version of the facts and reject

another or reject any of a witness' testimony. *Penagraph v. State,* 623 S.W.2d 341 (Tex.Cr.App.1981). For the reasons explained below, we believe that there was sufficient evidence to support the action of the trial court.

■ Appellant is correct in his assertion that an act clearly dangerous to human life is one that creates a substantial risk of death. An examination of the record shows the evidence was sufficient to allow the jury to resolve the question. Cary Dean Olson testified that he had picked up appellant, who was hitchhiking, and that appellant had told him that he (appellant) had kicked a man to death after he had showed him his business. Bill Hall, an employee in the alcohol detoxification center in which appellant was a frequent patient, testified that on or about the night the deceased died, appellant told him that he may have killed a man and that he thought there was blood on his boots. Witness Hall testified that he also thought the stains on appellant's boots looked like blood.

Appellant testified in his own behalf that he had kicked the deceased in the stomach, chest area, and in the head and that when he last saw the deceased, the deceased looked like he had suffered an "ass whipping." Finally, Dr. John P. Ray, Jr., the pathologist who conducted the autopsy of the deceased, testified that the deceased had sustained a severe fracture of the skull, as well as other injuries to the head and body. Further, he stated that the injuries to the skull were caused by the deceased being struck with a blunt instrument and that the blunt instrument must have struck at the deceased with "a severe and tremendous force" in order to have caused the severity of the skull fracture. As appellant himself concedes, the State's evidence was sufficient to raise a fact question that the act which caused the death was a kick to the head by a person wearing a boot.

Appellant contends that a kick to the head by a person wearing a boot is not an act clearly dangerous to human life. However, since there is evidence that the deceased was hit in the head with a severe and tremendous force, we believe that the jury could reasonably conclude that a kick to the head by a person wearing a boot, at least when the kick is delivered with severe and tremendous force, was an act clearly dangerous to human life. Appellant's second ground of error is overruled.

In his third ground of error, appellant argues that the trial court erred in failing to submit to the jury an instruction defining the term "act clearly dangerous to human life." As we stated above, the Penal Code does not define this term. Our Court of Criminal Appeals has stated that "[i]n such circumstances, the question is whether the term has such a common and ordinary meaning that jurors can be fairly presumed to know and apply such meaning." *Phillips v. State,* 597 S.W.2d 929, 937 (Tex.Cr.App. 1980). Appellant contends that unless the trial court defines this term more succinctly, the jury will likely always conclude that an act which caused a person to die was an act clearly dangerous to human life. He argues that the legislature, when it enacted § 19.02(a)(2), which permitted a conviction for murder when the State only showed that the accused had an intent to cause the deceased serious bodily injury and not an intent to cause the actual death, strictly limited the circumstances under which the State could bring a 19.02(a)(2) murder prosecution to those situations where the accused's actions were clearly dangerous to another's life. He thus reasons that since the jury will likely always find that an act which caused another to die was an act clearly dangerous to human life, if the trial court does not precisely and strictly define the term "act clearly dangerous to human life", the term will have in effect been read out of the statute. We disagree.

■ The general rule is that a court will not define terms left undefined by the legislature if the terms have a common and ordinary meaning. Thus, the question is presented if the term "act clearly dangerous to human life" has a common and ordinary meaning so that a juror could properly understand such term. We believe this term is not a special or technical term

which a jury is incapable of understanding absent court instruction. The trial court did not err in refusing to instruct the jury on the term "act clearly dangerous to human life."

Appellant further asserts in this ground of error that the court's charge to the jury on this issue was improper because the court implicitly instructed the jury that the act of striking the deceased's head with a blunt instrument was an act clearly dangerous to human life. In its charge, the court instructed the jury that in order to convict appellant of murder it must believe, beyond a reasonable doubt, that appellant "commit[ted] an act clearly dangerous to human life, towit: by striking the head of the said Olan K. Anderson with a blunt instrument."

■ We do not believe that this instruction, which tracked the language of § 19.02(a)(2), had the effect argued by appellant. The court was instructing the jury that it must believe beyond a reasonable doubt that the act of striking the head of the deceased with a blunt instrument was an act clearly dangerous to human life. The effect of the instruction, we think, was to require the jury to find both that appellant struck the deceased's head with a blunt instrument, and that this act was clearly dangerous to human life. This is consistent with the requirements of § 19.02(a)(2). Appellant's third ground of error is overruled.

■ Appellant contends in ground four that the trial court erred in submitting its charge to the jury on "causation" because this charge allegedly was not limited to causation and instead effectively eliminated the requirement of finding the specific intent essential to the offense charged. The court's charge to the jury on causation precisely tracked the statutory definition of "causation" found in § 6.04 of the Texas Penal Code. We do not believe this was error.

Appellant asserts that the second paragraph of the charge on causation effectively eliminated the requirement of specific intent contained in § 19.02(a)(2). We disagree. The paragraph, tracking the language of the causation statute Tex.Penal Code Ann. § 6.04, states that "[a] person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different offense was committed." We believe this is what is required under § 19.02(a)(2). As we explained above, a person is guilty of murder under § 19.02(a)(2) if he intended to cause another person serious bodily injury and that person is killed as a result of his actions, as long as his actions were clearly dangerous to human life. Thus, § 19.02(a)(2) states that a person can be said to have murdered another even though he did not intend to kill him, i.e. he is criminally responsible for causing another's death even though he only contemplated that the other would be seriously injured. The causation charge, which strictly tracks the statutory definition of criminal causation, does not in any way distort or eliminate the causation requirement in § 19.02(a)(2). Appellant's fourth ground of error is overruled.

In his fifth ground of error, appellant argues that the trial court erred in denying his motion for directed verdict because the evidence was allegedly insufficient to prove beyond a reasonable doubt the allegation contained in the indictment that the means and manner of the death were "unknown to the Grand Jurors."

■ The State's indictment against appellant read in pertinent part: "... by striking the head of the said Olan K. Anderson with a blunt instrument, the exact nature and description of which is unknown to the grand jurors ..." The general rule in this regard was stated by our Court of Criminal Appeals in *Clark v. State*, 151 Tex.Cr.R. 383, 208 S.W.2d 637, 638 (1948):

While ordinarily where the indictment charges that the manner of means and instrument which was used in the commission of the offense is not known, it is incumbent on the State to prove that the grand jury made diligent inquiry to ascertain the means or character of the instrument used in the commission of the

alleged offense, but where the evidence adduced upon the trial leaves uncertain the means used or the precise cause of the death of the deceased but creates no doubt that the deceased was killed by the acts of the accused, it is sufficiently proved.

If the State fails to provide such proof, this failure will constitute reversible error. *McIver v. State,* 555 S.W.2d 755 (Tex.Cr. App.1977). For the reasons explained below, we conclude that the State did present sufficient proof to establish that the means and manner of the deceased's death were unknown to the grand jurors.

Witness Olson testified that appellant had told him that he had kicked the deceased in the head but Olson did not see the actual incident. Witness Hall testified that appellant told him that he might have killed a man and that appellant said that he thought the stain on his boots and britches might be blood but Hall also was not present during the alleged attack. Dr. Ray, the pathologist who conducted the autopsy on the deceased, could only determine that the death was caused by a strike to the head by a blunt instrument, but Dr. Ray did not witness the actual incident nor could he pinpoint the cause of death with any greater specificity.

Jim Darnell, the First Assistant District Attorney testified at trial that all of this information was included in the file which was presented to the grand jury. The evidence does not reflect that the grand jurors were wanting in diligence in failing to find the specific means and manner by which the deceased died. We therefore conclude that the evidence was sufficient to prove the allegation contained in the indictment that the means and manner of the death were unknown to the grand jurors. Appellant's fifth ground of error is overruled.

In his sixth ground of error, appellant contends that the trial court erred when it failed to instruct the jury on the law applicable to the allegation in the indictment that the means and manner of decedent's death was "unknown to the grand jurors." Appellant argues that since this is an alle-gation contained in the indictment, the Texas Code of Criminal Procedure mandates that the court instruct the jury on the law with regard to the allegation. Again, we disagree.

█ Tex.Code Crim.Pro.Ann. art. 36.14 (Vernon Supp.1981) states in relevant part:
   ... [T]he judge shall ... deliver to the jury ... a written charge distinctly setting forth the law applicable to the case ...

A charge which fails to require the jury to find all elements of the offense alleged in the indictment is fundamentally defective. *West v. State,* 567 S.W.2d 515 (Tex.Cr.App. 1978); *Evans v. State,* 606 S.W.2d 880 (Tex. Cr.App.1980).

█ In this case, the charge did require the jury to find that the appellant struck the head of the deceased with a blunt instrument, "the exact nature and description of which is unknown to the grand jurors." Since no issue was raised by the evidence as to the grand jury's alleged lack of diligence in pinpointing with greater certainty the cause of the death it was not necessary for the court to submit any instruction thereon to the jury. *Clark v. State,* 151 Tex.Cr.R. 383, 208 S.W.2d 637 (1948). Appellant's sixth ground of error is overruled.

█ In his seventh ground appellant argues the trial court erred in submitting a charge on voluntary manslaughter on a theory of murder not alleged in the indictment. Initially, we note appellant failed to make this objection at trial. It is well established that in the absence of an objection to the charge at trial no errors therein can be considered on appeal "unless it appears that the defendant has not had a fair and impartial trial." *White v. State,* 610 S.W.2d 504, 507 (Tex.Cr.App.1981). And, in determining whether fundamental error is present, it is proper to view the charge as a whole. *White v. State,* supra; *Robinson v. State,* 596 S.W.2d 130, 133; *Slagle v. State,* 570 S.W.2d 916, 920 (Tex.Cr.App.1978). Therefore, this court will only review the trial court's alleged error in charging on voluntary manslaughter if this error caused the

appellant to be denied a fair and impartial trial.

The court's charge instructed the jury to first determine if appellant was guilty of murder and, if the jury concluded that appellant was not guilty of murder, then, and only then, was the jury instructed to determine if appellant was guilty of the lesser offense of voluntary manslaughter. The part of the charge to be examined in determining whether it is fundamentally erroneous is the part that applied the law to the facts. *Jones v. State,* 576 S.W.2d 393 (Tex.Cr.App.1979). By this rule is meant that we look to the part that applied the law of the offense for which the appellant was convicted. When the jury found that appellant was guilty of murder it had no occasion to deliberate whether the appellant was guilty of the lesser offense of manslaughter. Therefore, the error, if any, committed by the trial court in its charge on voluntary manslaughter could not have so misled the jury so as to have denied appellant a fair and impartial trial. See *Garrett v. State,* 642 S.W.2d 779, 781 (Tex. Cr.App.1982); *Thomas v. State,* 587 S.W.2d 707 (Tex.Cr.App.1979). Ground of error seven is overruled.

In appellant's eighth ground of error, he asserts that the trial court erred in overruling his motions for mistrial during the State's jury argument. Appellant contends that several statements made by the prosecutor during his closing argument were highly inflammatory, prejudicial and calculated to deny the appellant a fair and impartial trial.

We first note that appellant failed to object to several of these alleged improper statements during the trial court proceedings. During his closing argument, the prosecutor at one point referred to the appellant as "a shark [who] was swimming in that sea of troubled humanity [and] who silently, selectively, stalked and slew his victim in the course of committing robbery." Appellant argues that this prosecutorial remark was designed to inflame the jury against the appellant and thus was an improper remark. If appellant had object-

ed to the remark and if the trial court had concluded the remark was prejudicial and improper, the court could have instructed the jury to disregard the remark. By failing to object, appellant did not give the court the opportunity to instruct the jury to disregard it. We conclude that the prosecutor's "shark" remark is not so prejudicial that any harm could not have been cured by an instruction. Since appellant did not object when the allegedly offending statement was made, nothing is presented for our review. *Gonzales v. State,* 532 S.W.2d 343 (Tex.Cr.App.1976).

Appellant also objects for the first time on appeal to the prosecutor's statements during closing argument which referred to appellant as "a cold blooded killer" who committed a "cool, deliberate planned and calculated act." Again, by failing to object when the allegedly improper remark was uttered, appellant did not provide the court with an opportunity to instruct the jury, if necessary, to disregard the remark. The prosecutor's statements were not so prejudicial that any harm from them could not have been cured by an instruction. Since appellant did not make a timely objection, nothing is presented for our review. Id.

For the first time on appeal, appellant also objects to the prosecutor's statement during closing argument which referred to appellant as "a convict" and "a con." Appellant contends that these statements were improper because they were indirect references to appellant's prior convictions and to the fact that he had served time in prison and was on parole at the time that Olan K. Anderson had died. We first note that appellant's criminal history had already been detailed by himself when he testified during the trial and thus the jury was aware of these matters prior to the time of the closing arguments. Given that fact, we conclude that the prosecutor's statements were not so prejudicial that any harm from them could not have been cured by an instruction from the bench. Since appellant did not make a timely objection, nothing is presented for our review.

■ Appellant did make a timely objection to the prosecutor's statements during closing argument which expressly detailed the appellant's prior criminal history. The trial court sustained the objection and ordered the jury to disregard the remarks. Appellant then motioned for a mistrial and the trial court denied such motion. As we pointed out above, the appellant's criminal history was already before the jury prior to the closing argument. When the appellant's prior criminal history is already in the record prior to the time that the closing arguments are made, appellant cannot complain about the prosecutor's reference to that criminal history during the closing argument. *Hart v. State,* 581 S.W.2d 675, 679 (Tex.Cr.App.1979).

Appellant next complained of the prosecutor's statement during closing argument that the "Diamond Doll [tavern] is dead in the direction of where that dumpster is." Appellant had earlier testified that he had visited the Diamond Doll tavern after his fight with the deceased. Appellant contends that the prosecutor's statements were unsupported by any evidence adduced at trial and were designed to convince the jury that appellant had been the person who had dropped the deceased's wallet into the dumpster. Appellant made a timely objection to this statement, the court sustained the objection and instructed the jury to disregard it.

■ Ordinarily, any injury from an improper jury argument is obviated when an objection thereto is sustained and the jury instructed to disregard the argument. The only time such an instruction will not cure the harm from the improper argument is when it appears the argument is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Thomas v. State,* 578 S.W.2d 691 (Tex.Cr.App.1979). This argument did not fall within the type of argument which is so inflammatory that its effect cannot be cured by court instruction to disregard it. The instruction of the court was sufficient to render harmless any error.

■ Similarly, the appellant's objection to the prosecutor's assertion that "Herman Watts was a lookout outside of that sign company while [appellant] committed the murder" as being unsupported by the record was also cured by an instruction from the trial court to disregard that statement. This statement did not fall within the type of argument which is so inflammatory that its effect cannot be cured by court instruction to disregard it. Any error which may have been committed by the prosecutor was rendered harmless by the court's instruction.

Appellant contends that the prosecutor's most harmful improper statement was when he referred to the semen test which the police conducted on the deceased's body. The prosecutor stated in his closing argument to the jury:

Now, you want to know why we ran the test for semen in the body. Because the pants were undone and we wanted to find out if we were dealing with someone who had molested the body of a dead man.

Appellant argues that this statement referred to matters wholly outside the record. Appellant made a timely objection to this statement, the trial court sustained the objection and the court instructed the jury to disregard it. The trial court's actions were insufficient, appellant asserts, to obviate the harm caused by the statement. Appellant argues:

[O]ne can readily imagine the disgust, loathing, and abhorrence with which the Appellant was regarded by the Jury following the Prosecutor's brutally shocking suggestion, injected wholly from without the record, that Appellant was a man so utterly depraved as would seek sexual gratification through deviate abuse of a corpse.

In essence, appellant contends that the prosecutor's statement was so inflammatory that an instruction by the court to ignore such statement cannot cure the harmful effects of the statement.

The State is entitled, during its closing argument, to draw from those facts in evidence all inferences that are reasonable, fair, and legitimate and it is accorded wide latitude without limitation in this respect so long as the argument is supported by the evidence and offered in good faith. *Vaughn v. State,* 607 S.W.2d 914 (Tex.Cr. App.1980). In this case, the prosecutor's statement concerning the semen test done on the deceased is just such a reasonable inference which is drawn directly from the record. The prosecutor did not state that the evidence showed that appellant had molested the body of a dead man. Instead, he stated that the State had conducted a semen test *in order to determine if* someone had done such an act. The record is replete with evidence concerning the semen test which was conducted on the deceased after his death. Dr. Ray, the pathologist, testified at some length concerning the semen test conducted on the deceased and the results of the test. The testimony of Burgess Cooke, the chemist for the Department of Public Safety in Lubbock, also concerned semen tests conducted on the deceased's clothing. The prosecutor's comments concerning the reasons that the State conducted these tests are thus a reasonable inference from the evidence and testimony presented. There was no error committed by the prosecutor, therefore, when he uttered these remarks concerning the tests.

Even if, arguendo, the prosecutor erred when he made his remarks concerning the semen tests, the error was rendered harmless by the trial court's prompt instruction to the jury to disregard the prosecutor's remark. *Thomas v. State,* supra. The prosecutor's statement, which did not accuse the appellant of molesting the deceased's body but instead only explained to the jury the reason that the State conducted the test, was not so clearly inflammatory that the court's instruction to disregard would not obviate the harm. Ground of error eight is overruled.

There being no reversible error, the judgment of the trial court is affirmed.