NO. 07-01-0423-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 14, 2002

______________________________

KEVIN LEHMAR COPELAND, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 248
TH
 DISTRICT COURT OF HARRIS COUNTY;

NO. 875036; HONORABLE JOAN CAMPBELL, JUDGE

_______________________________

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In five points of asserted error, appellant Kevin Lehmar Copeland challenges his conviction of aggravated robbery and the resulting sentence of 18 years confinement in the Institutional Division of the Department of Criminal Justice.  In his first two issues, he raises legal and factual challenges to the sufficiency of the evidence to prove that he used, or attempted to use, any unlawful force against the complainant as alleged in the indictment.  In his third and fourth issues, he raises those challenges to the sufficiency of the evidence to prove he had intended for unlawful force to be used against the complainant as alleged in the indictment. In his fifth issue, he contends the trial court reversibly erred in overruling his objection to the admission into evidence of two ski masks and two live .38 caliber bullets because they were not material to any issue in the case.  Disagreeing that reversal is required, we affirm the judgment of the trial court.

The nature of appellant’s assertions requires us to discuss the relevant evidence.  Claudia Majano testified that about 11:00 a.m. on December 14, 2000, accompanied by her two children, she drove to the One Price Store in Houston.  As she was about to get out of her truck, a man later identified as Larry Jackson approached Majano, placed a gun against her leg, told her not to scream, and ordered her to open her door and give him all of her money.  Because she was frightened, she gave him $80 she had earlier withdrawn from her bank account. He also demanded her wallet, which was sitting on the dashboard.  Majano refused, but gave him the money she had in it.  Jackson then demanded that she “scoot” over and let him in the vehicle.  However, as he started to get in, Jackson saw a police officer watching the robbery take place and, after uttering an expletive, ran away.  Later, the police brought Jackson and appellant in a patrol car to Majano.  She was able to identify Jackson as the man who robbed her, but was unable to identify appellant as a culprit in the robbery, even though appellant “was claiming himself that he had done everything.”  She never saw appellant enter or exit an automobile on the parking lot.  

Wanda Brooks drove to the One Price Store around 11:00 and saw Jackson get out of a car located close to the store.  She saw Jackson approach Majano and threaten her with a revolver. She then drove to a nearby Houston Police Department storefront office and informed an officer of what she had just seen.

Houston Police Officer J. P. Hicks was on duty at the time of the incident and was stationed at the storefront office.  Brooks told him that she had seen a man rob Majano. Hicks went outside and saw the man run from the scene of the robbery with a dark colored object in his hand.  He then watched as the man jumped into the back seat of a blue Oldsmobile Alero, which was parked nearby in the driveway of a vacant lot with its back door open.  Hicks averred that the automobile took off before Jackson was fully inside the car.   The officer followed in his patrol vehicle, turned on his lights and siren and, at a high rate of speed, chased the Oldsmobile until it hit a curb and had to stop because of a broken axle.  When the automobile stopped, Jackson got out and ran until he was apprehended.  The driver of the Oldsmobile, later identified as appellant, attempted to drive  away, but because of the car’s condition, was unable to do so.  Pursuant to a search of the Oldsmobile, Houston police officers recovered two ski masks and two live .38 caliber rounds of ammunition.   

Shmeka Kerney, appellant’s fiancee, also testified.  She was in the back seat of appellant’s automobile.  She said that on the day of the robbery, appellant had agreed to drive Jackson to the Third Ward in Houston.  According to her, appellant took Jackson by a house, waited ten or fifteen minutes, Jackson came back, and they went to a drug store for some medication.  The drug store was in the same area as the One Price store.  Kerney averred she did not get out of the car, but appellant went inside and got the medicine for her.  As he did so, Jackson also got out of the car.  After she took her medication, she said,  she and appellant went to a service station to get some gas.  While they were doing that, Jackson came back, put a pistol to her head, and instructed appellant to “go as fast as you can and leave this, I promise I’ll shoot her.”  Appellant then took off in the car rapidly as instructed.  She denied that either she or appellant attempted to run or flee from the scene after the car stopped. 

Subsequent to Kerney’s testimony, Officer Hicks was recalled and testified that during the chase, he could see inside the Oldsmobile and Jackson did not have his gun pointed at Kerney’s head.  He also averred that Kerney claimed she had been asleep during the episode and she never mentioned that Jackson had held a gun to her head.  He also opined, during cross-examination, that Kerney could not have slept through the high-speed  chase.  He further insisted that he saw the Oldsmobile parked in a vacant lot, not at the service station.

The standards to be applied by an appellate court in considering legal and factual insufficiency claims are, by now, axiomatic.  Suffice it to say that in assessing the legal sufficiency of evidence, we must review the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
King v. State
, 895 S.W.2d 701, 703 (Tex.Crim. App. 1995).  In determining the factual insufficiency challenge, we must examine all the evidence without the prism of in the light most favorable to the verdict, and determine whether the overwhelming weight of the evidence so contradicts the verdict as to make it clearly wrong or unjust.  
Clewis v. State
, 922 S.W.2d 126, 135 (Tex.Crim.App. 1996).  In conducting our review, we must bear in mind that under both standards, the factfinder may still reasonably infer facts from the evidence before it, credit the witnesses it cares to, disbelieve any or all of the testimony proffered, and weigh the evidence in the manner it desires.  
Depauw v. State, 
658 S.W.2d
 
628, 633-34 (Tex.App.--Amarillo 1983, pet. ref’d).  Those are the prerogatives of the factfinder as opposed to the reviewing court, and we may not usurp them.

In relevant part, section 29.02(a)(2) of our Penal Code provides that a person commits the offense of robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he “intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.”  Tex. Pen. Code Ann. § 29.02(a)(2) (Vernon 1994).  As material here, section 29.03 provides that the offense becomes aggravated if, in the course of committing a robbery as defined in section 29.02, he “uses or exhibits a deadly weapon.”  Tex. Pen. Code Ann. § 29.03(a)(2) (Vernon 1994).  Relevant portions of Penal Code section 6.03 provide:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.  The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances or as viewed from the actor’s standpoint. 

Tex. Pen. Code Ann. § 6.03(a), (b), and (c) (Vernon 1994).

Section 7.01 of the Penal Code states:

(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

(b) Each party to an offense may be charged with commission of the offense.

(c) All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.

Tex. Pen. Code Ann. § 7.01(a), (b), and (c) (Vernon 1994).

The trial court’s charge authorized the conviction of appellant either as a principal or as an accomplice.  The thrust of appellant’s first two issues is that the evidence was both legally and factually insufficient to sustain his conviction as a principal because the State failed to prove he used or attempted to use unlawful force in the commission of the offense.  In responding to that allegation, the State relies on a portion of Majano’s testimony in which she testified that when the police brought appellant to her for her inspection, they told her that appellant said he had approached her with a gun.  However, she iterated that “it wasn’t true,” and reiterated that “[h]e wasn’t the one who pulled the gun on me.”  There was no other evidence that directly connected appellant with the offense.  Even assuming arguendo that Majano’s recitation of a hearsay statement constituted a scintilla of evidence of appellant’s guilt, in the face of her firm and repeated assurances that appellant was not the individual who approached her with the gun, the evidence is simply factually insufficient to show appellant was the individual who physically committed the robbery. 

However, that decision does not end our task.  We must next consider appellant’s third and fourth issues in which he contends the evidence is both legally and factually insufficient to show he was guilty under the law of parties.  Mere presence at or near the scene of a crime is insufficient to prove that a person is a party to the crime, but it is a circumstance tending to prove guilt and combined with other circumstances, may suffice to show that an accused was a participant.  
Beardsley v. State
, 738 S.W.2d 681, 685 (Tex. Crim.App. 1987). Also, flight from the scene of a crime is not sufficient in and of itself to sustain a conviction, but it is a circumstance which, when combined with other incriminating evidence, may be sufficient to show an individual guilty as a party to a crime.  
Thompson v. State
, 697 S.W.2d 413, 417 (Tex.Crim.App. 1985).  Thus, in determining whether the evidence was sufficient to show appellant was a party to the charged offense, we look to the evidence concerning events occurring before, during, and after the commission of the offense.  
Beardsley
, 738 S.W.2d at 684; 
Scott v. State
, 946 S.W.2d 166, 168 (Tex.App.--Austin 1997, pet. ref’d).

Under the evidence, the jury could reasonably have concluded that appellant knew that Jackson had a gun and that he transported Jackson to the One Price store for the purpose of using the gun in a robbery.  They would also be justified in concluding that appellant was parked nearby for the purpose of aiding Jackson in making an escape from the scene, and that, by his conduct after Jackson ran back to the car, he was endeavoring to help Jackson escape from the scene.  In sum, the evidence was sufficient to justify the jury’s evident conclusion that appellant was guilty as a party to the offense charged.  Appellant’s third and fourth issues are overruled.

As we noted above, in his fifth issue, appellant contends that the trial court reversibly erred in admitting into evidence two ski masks and two .38 caliber bullets found in the rear seat of the Oldsmobile.  The record shows that appellant objected to the admission of these items at a preliminary hearing conducted outside of the presence of the jury on the basis that they were not relevant.  However, when the items were tendered into evidence before the jury, appellant not only failed to object, he specifically stated to the trial court that he had no objection to their admission.  In order to preserve a matter for appellate review, it is required that the record must show that an objection to the admission of the evidence was timely made and that the objection was sufficiently definite to inform the trial court of the grounds for the objection.  Tex. R. App. P. 33.1(a)(1).  Moreover, in the absence of the granting of a running objection by the trial court, counsel must object every time allegedly inadmissible evidence is tendered. 
 
Scaggs v. State
, 18 S.W.3d 277, 291 (Tex.App.–Austin 2000, pet. ref’d).  As we have noted, appellant not only failed to object, he specifically stated he had no objection at the time of their tender.  Appellant’s fifth issue is overruled.

In sum, all of appellant’s issues are overruled, and the judgment of the trial court is affirmed.

John T. Boyd

 Chief Justice

Do not publish.