NO. 07-04-0233-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JANUARY 12, 2006



______________________________




ROGER D. TAYLOR, APPELLANT



v.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2003-403,443; HON. CECIL G. PURYEAR, PRESIDING



_______________________________



Before QUINN, C.J., REAVIS, J., and BOYD, SJ. (1)

MEMORANDUM OPINION


 Presenting two issues for our determination, appellant Roger D. Taylor seeks
reversal of his conviction of aggravated sexual assault and the resulting sentence of 40
years confinement in the Institutional Division of the Texas Department of Criminal Justice. 
In those issues, he asks us to decide if: 1) the evidence was sufficient to sustain his
conviction, and 2) if the trial court erred in allowing evidence of his prior felony conviction. 
We affirm the judgment of the trial court.

Background

 Because of the nature of appellant's challenges, it is necessary to recount in some
detail the relevant evidence. The evidence showed that J. S., the complaining witness in
this case, was 14 years old at the time of offense. She attended special education classes,
had been held back a grade, was functionally illiterate, had a speech impediment, and
needed to wear a hearing aid, albeit she usually did not wear the hearing aid to avoid
teasing by other children. The rape crisis volunteer, who was with the victim at the
hospital, said the complainant had an immature, child-like vocabulary.

 On the day in question, J. S. went to the recreational vehicle (RV) occupied by
appellant, a 37-year-old man, to get some cigarettes and to see if appellant's 18-year-old
nephew was there. According to her, appellant had a bb or pellet gun that they used to
shoot at targets through the window of the RV. Then appellant, the complainant, and
appellant's nephew began playing board games. Sometime during the game period,
appellant's nephew left, but the complainant and appellant finished the game they were
playing.

 The complainant testified that when the board game was finished, she attempted
to leave the RV but appellant, who was taller and stronger, wrestled her to a couch bed in
the RV and started kissing her and "stuff." She averred that she asked appellant to stop,
but he pushed her pants and underwear down to her feet and held her "real tight." 
Appellant undid his pants, losing a button in the process, sat on her chest, and attempted
to place his penis in her mouth. She said she was moving her head and crying, but
appellant held her down by putting his hands on her hips. (2) When his attempts to get her
to perform oral sex upon him failed, with his hand over her mouth, appellant "went down"
and put his penis inside her vagina. His movements were "hard," and she felt a tearing
sensation in her vagina. J. S. said that she was afraid during this period of time that
appellant would "start hitting me and stuff" and that he might "hit me with the gun and stuff."

 While this was going on, appellant's phone rang and he got off of her, answered the
phone, and gave the phone to J. S. While appellant had been answering the phone, J. S.
started putting her clothes on "real fast." Appellant told J. S. the caller was her mother who
told her to come home. While J. S. was talking to her mother, she did not tell her what had
happened, because J. S. averred, "he was going to hurt me or something if I told." After
she finished talking to her mother, she finished dressing and, after being told by appellant
not to tell anyone what happened, she was allowed to leave. 

 In order to do so, she jumped a fence gate and went to the street. As she was
pacing back and forth on an adjacent street, she was found by an off-duty Lubbock County
sheriff's deputy in front of his home. He said that J. S. ran up to him and told him she was
"in trouble." J. S. looked "very confused, real dazed" so the deputy took her into his house
and notified the Wolfforth Police Department. The Wolfforth police officer who answered
the call said that the child was visibly shaken, distraught, and crying. She was taken to the
hospital for an examination. That examination revealed a bruise on her left thigh and inner
calf, an abrasion similar to a rug burn on her back, and a semen-like substance in her
vaginal vault that was consistent with ejaculation during intercourse.

 A DNA analyst and serologist analyzed a semen stain taken from the victim's
panties in which the semen had pooled and concluded that appellant was the source of the
stain. Although a small amount of semen was detected in her vagina, no DNA test was
performed on the sample.

 Appellant testified that while there was an antique pellet gun in the RV, it had not
been used. He said that on the date of the occurrence, J. S. had insisted on coming to the
RV although he had asked her not to do so. She propositioned him, and pulled up her shirt
and bra exposing her breasts. She grabbed his pants and attempted to pull them down
while he struggled to keep them up. She succeeded in getting them down and grabbed
his penis. At this point, the phone rang and as he spoke to her mother, J. S. continued to
undress by taking her shoes and pants off. After she hung up, J. S. told him "[w]e"ve got
to hurry, . . . [she] wants me home." Appellant said the events were "very stressful," and
he was mad and used "some colorful language at her." He denied any sexual activity with
her and said that he told her to go away. He also averred that she had said that she was
going "to tell everyone we did it" to which he replied, "just get out." He also denied
ejaculating. 

Discussion

 The thrust of appellant's first issue is that the evidence is insufficient to support the
jury's finding that appellant placed J. S. in fear of death or serious bodily injury. To sustain
the conviction for aggravated sexual assault, the State must have shown that appellant:
1) intentionally or knowingly, without the consent of J. S., caused his sexual organ to
contact or penetrate her mouth or sexual organ, and 2) by acts or words placed her in fear
of imminent death or serious bodily injury. See Tex. Pen. Code Ann. §§22.021(a)(1)(A)(iii)
and (a)(2)(A)(iii) (Vernon Supp. 2005).

 The standards by which an appellate court determines those challenges are now
axiomatic. The standard for determining the legal sufficiency of the evidence is whether,
after viewing the evidence in a light most favorable to the verdict, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If a challenge to the
legal sufficiency of the evidence is sustained, an appellant is entitled to acquittal. Tibbs
v. Florida, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

 In reviewing the factual sufficiency of the evidence, the reviewing court is to examine
all the evidence, without the "in the light most favorable to the prosecution" prism, to
determine if: 1) the evidence is so weak as to be clearly wrong and manifestly unjust, or
2) the adverse finding is against the great weight and preponderance of the available
evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). Finally, under both standards, the fact finder
may still reasonably infer facts from the evidence before it, credit the witnesses it cares to,
disbelieve any or all of the testimony proffered, and weigh the evidence in the manner it
chooses. Depauw v. State, 658 S.W.2d 628, 633-34 (Tex. App.-Amarillo 1983, pet. ref'd). 
Those are the sole prerogatives of the factfinder not to be usurped by the reviewing court.

 As we noted above, aggravated sexual assault is sexual assault with the additional
element that the assaulter has placed the victim in fear of death or serious bodily injury. 
Thus, the jury is mandated to assay first if that state of fear in fact existed; the defendant's
conduct is then assessed to determine if it was the producing cause of the fear and
whether the subjective state of fear was reasonable in light of the conduct of the defendant. 
Grunsfeld v. State, 813 S.W.2d 158, 162 (Tex. App.-Dallas 1991), aff'd, 843 S.W.2d 521
(Tex. Crim. App. 1992); see also Dacquisto v. State, 721 S.W.2d 603, 604-605 (Tex.
App.-Amarillo 1986, pet. ref'd). 

 In this case, the evidence showed that the victim was 14 years of age while
appellant was 37 years old and was taller and stronger than she. The complainant twice
testified that she was fearful during the incident and that she was afraid that if she did not
comply that appellant was going to "start hitting me and stuff." In particular, she averred
that she was afraid of the gun and that appellant would "hit me with the gun and stuff." She
said she did not tell her mother over the phone what appellant was doing because she
thought "he was going to hurt me . . . if I told."

 Her testimony was that as she was attempting to leave the RV, appellant wrestled
her to the bed, gripped her by the arms, as she was crying she asked him to stop but he
held her down "real tight," removed her clothes, tried to place his penis in her mouth, forced
her legs apart with "real hard" force, placed his hand over her mouth, and entered her
vagina causing her pain. During the assault, she suffered a scrape to her back, marks to
her hips, and bruising to her leg. While appellant testified to a quite different set of facts,
the jury, in its role as the factfinder, chose to accept the victim's testimony. In viewing the
totality of the circumstances, particularly the difference in the age of the participants, the
difference in the physical size, and the immaturity of the victim, we cannot say that the jury
erred in its obvious conclusion that the child was placed in fear of death or serious bodily
injury by the conduct of appellant. Appellant's first issue is overruled.

 In his second issue, appellant contends that the trial court reversibly erred in
allowing the State to impeach him with evidence of a felony conviction for which he had
been placed on probation and had successfully completed the probationary term. The
State acknowledges that the admission of that evidence was error. Because the error is
not of constitutional dimension, we must determine whether the error was harmless or
whether appellant's substantial rights were affected. See Tex. R. App. P. 44.2(b); Theus
v. State, 845 S.W.2d 874, 882 (Tex. Crim. App. 1992).

 In conducting a Rule 44.2(b) analysis, and in assessing the likelihood that the error
adversely affected the jury's decision and deprived an appellant of a substantial right, the
reviewing court must consider everything in the record, including all testimony and
evidence admitted before the jury, the nature of the evidence supporting the verdict, the
character of the error, and how the error might have been considered in connection with
the other evidence in the case. In addition, the reviewer may consider the jury instructions,
the State's theory of the case, any defensive theories, the voir dire, the closing arguments,
and the emphasis the State placed on the error. See Geuder v. State, 142 S.W.3d 372,
376 (Tex. App.-Houston [14th Dist.] 2004, pet. ref'd). 

 In reviewing the record, we note that the dialog during which he was questioned
about the prior conviction was very brief consisting of two very short questions with one
two-word acknowledgment of the conviction and an affirmative "yes" to the question about
the county of the conviction. We also note that the State asked for a limiting instruction as
to how the jury was to consider the conviction which was omitted because of appellant's
objection. There was no reference by the State to the conviction during argument. 

 In examining the record to consider the probable weight placed on the error by the
jury, we must note appellant's testimony. He averred that this 14-year-old girl, smaller than
him, came to his RV, wanted to have sex with him, pulled up her shirt to reveal her
breasts, and began fondling them. She then grabbed his pants with enough force to cause
a button to rip off and, even though appellant struggled, she persisted in pulling his pants
down and succeeded in doing so over his objections. She then attempted to place his
penis in her mouth, and, although he did not want her to do so, he was prevented from
struggling more because she "had ahold of something really tender." At this point, the
phone rang and appellant was able to extricate himself and answer it telling J. S. her
mother was on the phone. In the meantime, J. S. had removed her shoes, pulled down her
pants, and jumped into his lap. He averred he was shocked by the actions of J. S. After
he succeeded in getting the girl off his lap, she talked on the phone to her mother. While
she was on the phone, appellant quickly changed clothes. After J. S. got off the phone,
she told appellant they would have to hurry because her mother wanted her home. 
Appellant said her conduct had made him mad and it was "very stressful" to him. He then
used some "colorful" language to her. She began crying and told him that she was going
to tell every one that they "did it" and there was nothing he could do about that. He denied
that he was aroused and was never able to explain why his semen was found in the
victim's panties.

 Because of the striking difference in the testimony of appellant and the child, the jury
would have had a great deal of testimony they validly could have considered in determining
appellant's credibility. In view of the totality of all of the evidence, the very brief reference
to the conviction by the State, and the fact that the error is not one that would be calculated
to make the State feel that it could repeat such errors with impunity, we hold that the error
was not sufficient to affect appellant's substantial rights. Appellant's second issue is
overruled.

 In sum, both of appellant's issues are overruled, and the judgment of the trial court
is affirmed. 


 John T. Boyd

 Senior Justice


Do not publish. 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2005). 
2. The rape crisis volunteer testified that when she saw the complainant at the
hospital shortly after the incident, she noticed red marks on her hips "just like somebody
had just put . . . their hand really, really hard on her hips. . . . "