ALF THUROGOOD v. THE STATE.

No. 5748. Decided April 7, 1920.

**Assault to Murder—Aggravated Assault—Charge of Court.**

Where, upon trial of assault to murder and a conviction of that offense, the evidence raised the issue of aggravated assault, it was immaterial from what testimony said issue was raised, and an appropriate instruction should have been given, and the court's failure to submit a charge on the law of aggravated assault as requested by the defendant is reversible error.

Appeal from the District Court of San Jacinto. Tried below before the Honorable J. L. Manry.

Appeal from the conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. M. Hansbrc* and *Earle Adams*, for appellant.—On question of court's charge: Sanders v. State, 148 S. W. Rep., 566; Skinner v. State, 154 S. W. Rep., 1007.

87 Tex.—14

*Alvin M. Owsley,* Assistant Attorney General for the State.—Cited: Hooper v. State, 160 S. W. Rep., 1188; Crutchfield v. State, 152 S. W. Rep., 1053.

DAVIDSON, Presiding Judge.—Appellant was convicted of assault to murder and given two years in the penitentiary.

The evidence discloses that there was a question of ownership of hogs arising between Collie Griffin, a negro, and A. B. Knight, a white man. Griffin killed a couple of hogs which were claimed by Knight as his property. An investigation of the matter was instituted, and on the morning of the trouble evidenced by this record five white men, two being officers, who summoned two other white men, and these four accompanied by Knight went to the residence of Griffin in reference to the hogs. At Griffin's residence was himself, his wife, an old negro woman, the grandmother of appellant, appellant and a negro named White. When the white men came Griffin was informed by one of the officers of their mission, and the further fact that they had papers authorizing them to investigate his premises. He told them the papers were unnecessary, that if they wanted to examine his premises they could do so with or without the papers, and immediately accompanied one of the officers into his smokehouse, the other white men following. Griffin and officer Dolive, after being in the smokehouse a little while looking at the hogs, came out. The alleged assaulted party in this case, Williams, was standing by, the three men standing within three or four feet of each other, when Dolive informed Griffin that he wanted to search his person. To this Griffin demurred, remarking, "now here." Some of the witnesses testified that he holloed out, "Get your guns boys," or words to that effect. This was denied by other witnesses. The State's theory was that when Dolive informed Griffin of his purpose to search him that Griffin demurred and reached for his pistol. When this was done Williams and Dolive reached for and drew their pistols. The defensive theory of that phase of the case was that the officers reached for and drew their pistols first, and that Griffin then reached for his and the shooting began. The manner of the shooting and number of shots is widely variant under the testimony. From the testimony Williams may have shot first or Dolive first, or Griffin first, and the State's testimony indicates that appellant, who was standing on the gallery of the residence eight or ten feet from where the three parties were, fired the first shot. These were issues shown by the evidence. The defensive evidence was that appellant did not fire; that when the shooting began he ran in the house and was standing in the room by his old grandmother and did not engage in the shooting, and that the shooting was done by Griffin and White. These two were negroes as was appellant. All the others engaged in the trouble were the five white men.

Just what was the purpose of Dolive in wanting to search Griffin is not shown or disclosed by the evidence. It is shown that Griffin had

a pistol on his person, but the officers had no authority to take that from him. He was not violating the law. He was not arrested. He was on his own premises, and had a right to have his pistol. Griffin was the only one of the parties who received a wound. He was shot in one arm and dropped his pistol, which was gotten by one of the officers, who kept it and had it and offered to make profert of it at the trial. There is an issue as to who fired the first shot, and who was the occasion of the first shot being fired. It is asserted upon one side and denied upon the other that appellant fired or had anything to do with the shooting. He denies it and other evidence denies it for him. None of the officers were struck by the shots. The papers claimed to have been in possession of the officers authorizing their visit to Griffin's place, either to search his premises or to arrest him, were not produced at the trial. It was claimed by Dolive, the officer, that he lost them. The justice of the peace, who is supposed to have issued the papers, seems not to have testified in regard to the matter, and the record is anything but satisfactory as to what the papers held by the officers contained.

Under this state of case the court defined assault and battery and malice, and submitted the case for the consideration of the jury only upon the theory of assault with intent to murder. The jury convicted of that offense and gave appellant two years in the penitentiary. The party alleged to have been assaulted was Williams, and the State's claim was that appellant shot at Williams; that Williams was within about eight or ten feet of appellant when he fired more than once with a rifle of some character supposed to have been a Winchester; that Dolive was about two or three feet or such matter from Williams and Griffin, and about the same distance from both of them, and all within a few feet of appellant. The court, applying the law to the case instructed the jury if they were satisfied beyond a reasonable doubt that appellant with a deadly weapon and with malice aforethought assaulted John Williams with intent then and there to kill him, by the means charged in the indictment, and if they should further find from the evidence beyond a reasonable doubt that said assault was not made under the immediate influence of sudden passion, produced by an adequate cause, as same is hereafter explained to them, and not in defense of himself against an unlawful attack producing a reasonable expectation or fear of death or serious bodily injury, then they would find defendant guilty of an assault with intent to murder. There was no exception taken to this phase of the charge, except in a general way in the motion for new trial. This charge did not go far enough to meet what appellant thought was a defect in submitting the case fairly, and to meet this defendant asked the court to instruct the jury with reference to aggravated assault, and that if appellant did make the assault, but at the time was so excited either by fear, rage, excitement or anger as to deprive him of his power of cool deliberation, and had no malice toward the injured

party, then deefndant would only be guilty of an aggravated assault and battery, and if the jury so believed or had a reasonable doubt they should find him guilty of aggravated assault and punish him as provided by the statute. Appellant also asked the court to instruct the jury that in order to convict defendant of assault to murder the evidence must show that the defendant, if he made an assault on the injured party, had at the time of making such assault a specific intent to kill Williams, and if such specific intent did not appear beyond a reasonable doubt, he could not be convicted of an assault with intent to murder.

If appellant was not actuated by malice aforethought he could not be guilty of assault with intent to murder. He may have had the specific intent to kill, yet if it was under circumstances that would have constituted manslaughter had the killing occurred, his failing to kill would not constitute assault to murder. It would be but aggravated assault. But if he did not have the specific intent to kill, or had no intent to kill, or was firing under the defensive theory to protect Griffin from the assault made upon him by either or both officers, Dolive and Williams, then he would not be guilty of assault with intent to murder. He may have fired too quick, or he may have fired under circumstances that showed no deliberation, and under the impulse of the moment, seeing his friend and relative about to be shot by others. This might constitute aggravated assault, or even might suggest a charge upon self-defense. There were five white men at Griffin's home and armed. It seems that defendant and White were there accidentally; at least such is the theory of the defensive testimony, and the testimony upon this is pretty clear if the jury should believe it. He may have fired with no specific intent to kill, or he may have fired under such circumstances that had he intended to kill and the killing occurred it would have been manslaughter, and, therefore, failing in the homicide it would be aggravated assault. The court charged the jury that if the shooting occurred under malice aforethought with intent to kill, he would be guilty of assault to murder, but in order to reach this he instructed the jury that his mind must not be influenced by sudden passion and adequate cause, but failed to instruct the jury of what he would be guilty if his mind was so influenced. It occurs to us that the charge asked by appellant but refused by the court should have been given. It seems conceded that Williams and appellant had always been on very friendly terms. We think the issue of aggravated assault was in the case. It is immaterial from what testimony the issue may be raised, but if it is in the case appropriate instructions must be given. We are of opinion the court should have charged on aggravated assault as requested by appallant.

The judgment will, therefore, be reversed and the cause remanded.

*Reversed and remanded.*