COURT OF APPEALS

OCT 2 5 1999

LISA ROMBOK
CLERK, 5th DISTRICT

RECEIVED IN
COURT OF APPEALS. 5th DIST.

OCT 2 5 1999

LISA ROMBOK
CLERK, 5th DISTRICT

05-96-0803-CR



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. 1699-98

**RONNIE RAY MIMS, Appellant**

v.

**THE STATE OF TEXAS**

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIFTH COURT OF APPEALS
DALLAS COUNTY**

**KELLER, J.,** *delivered the unanimous opinion of the Court.*

### OPINION

We granted appellant's petition to determine whether a defendant in an attempted murder

prosecution is entitled to an instruction on the "sudden passion" issue[1] when such instruction is

raised by the evidence. The Court of Appeals held that "the law does not require an instruction on

---

[1] For the purpose of this opinion, when referring to "sudden passion," we mean the entire concept encompassed by the issue set forth in Texas Penal Code §19.02(d). All references to sections are to the version of the Texas Penal Code applicable to the current prosecution except as otherwise indicated.

sudden passion in an attempted murder case." *Mims v. State*, 1998 W.L. 334441, slip op. at 1-2 (Tex. App.--Dallas June 25, 1998)(unpublished). We will reverse.

The first rule of statutory construction is that we interpret statutes in accordance with the plain meaning of their language unless the statutory language is ambiguous or the plain meaning leads to absurd results. *Boykin v. State*, 818 S.W.2d 782, 785-786 & 786 n. 4 (Tex. Crim. App. 1991). In accordance with *Boykin*, we examine the language of the statutes in question.

The murder statute begins by defining "adequate cause" and "sudden passion" — terms that are used later in the "sudden passion" issue. *See* Texas Penal Code §19.02(a).[2] The next section of the murder statute proscribes conduct constituting the offense. §19.02(b). The law considers conduct that "causes the death of an individual" to be murder if one of three culpable mental states or circumstances accompanies the conduct: (1) intent or knowledge (that death would occur), (2) the intent to commit serious bodily injury coupled with an act clearly dangerous to human life, and (3) the commission or attempted commission of a felony coupled with an act clearly dangerous to human life. *Id.*[3] The punishment for murder is set out as follows:

---

[2] The pertinent subsection provides:

(a) In this section:

(1) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

(2) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

[3] The text of that subsection provides:

(c) Except as provided in subsection (d), an offense under this section is a felony of the first degree.

(d) At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, *the offense is* a felony of the second degree.

Texas Penal Code §19.02(c) & (d)(emphasis added).

The criminal attempt statute provides in relevant part:

(a) A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of *the offense intended.*
....
(d) An offense under this section is one category lower than *the offense attempted....*

Texas Penal Code §15.01 (emphasis added).

Appellant contends that the attempt statute and the sudden passion issue should, in an appropriate case, combine to create a third degree felony. We agree. The plain language of both the murder and attempt statutes supports this conclusion. §19.02(d) characterizes sudden passion murder as an "offense" that is a second degree felony. The attempt statute provides that the attempt offense is one degree lower than the "offense" attempted. If sudden passion is shown, the "offense" attempted is second degree murder, and hence, the attempt offense (attempted second degree murder)

---

A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

is a felony of the third degree. The attempt statute does not state that the punishment range must be determined solely by the elements of an offense as found in the guilt phase of the trial. Under the murder statute, if the sudden passion issue is submitted, the degree of the offense is not determined until the punishment phase ends. Under the plain language of the statutes, then, the sudden passion issue can be submitted in an attempted murder prosecution.

The State makes several arguments for finding the sudden passion issue to be inapplicable in the present context. First, the State focuses on the language of the §19.02(d) with emphasis on the italicized portion:

> At the punishment stage of a trial, the defendant may raise the issue as to *whether he caused the death* under the immediate influence of sudden passion arising from an adequate cause.

Relying upon this language, the State contends that the sudden passion issue applies only when the defendant actually causes the death of an individual — which does not occur in an "attempt" crime. But all crimes to which the attempt statute applies are defined as the completed versions of the crime. The crime of murder, for example, requires that a death occur. The real question is whether "second degree murder" can be considered as the base offense for determining the degree of felony under the attempt statute when second degree status is determined in the punishment phase. That the punishment phase issue, along with the guilt phase elements in the statute, assumes a completed offense does not answer that question.

Moreover, "causing the death of an individual" is *not* an element of the sudden passion issue in a murder prosecution. The factfinder has already determined, at the time the sudden passion issue is submitted, that the defendant caused the victim's death. The italicized words in the phrase "*whether he caused the death* under the immediate influence of sudden passion arising from an

adequate cause" simply acknowledge the setting in which the remainder of that phrase can be evaluated.

Further, the phrase "he caused the death under the immediate influence of sudden passion arising from an adequate cause" in §19.02(d) is identical to language contained in the old voluntary manslaughter offense found in former §19.04, for which attempt was available. See §19.04(a)(1993). That the language was simply lifted from the voluntary manslaughter statute mitigates against finding that language to have changed the applicability of the attempt statute to sudden passion homicides.

Second, the State claims that the basis for submitting the sudden passion issue in an attempt case disappeared with the abolition of the voluntary manslaughter offense. That argument assumes that the degree of the object crime must be determined solely from the results of the guilt phase of trial — an assumption that appears to be inconsistent with the statutory language, as we have discussed above. Moreover, the State's argument is undermined by Texas' long history of treating attempted murder with more leniency when the defendant acts with "sudden passion."

Before 1927, criminal homicide was divided into three categories: negligent homicide, manslaughter, and murder. *See* Texas Penal Code Chapters 14, 15, and 16 (1925). Negligent homicide involved death caused by negligence or carelessness where there was an apparent danger of causing death. Texas Penal Code, Articles 1231 and 1232 (1925). Manslaughter involved "voluntary homicide committed under the immediate influence of sudden passion arising from an adequate cause, but neither excused nor justified by law." Texas Penal Code, Article 1244 (1925). Murder involved the killing of another person with "malice aforethought" and was "distinguishable from every other species of homicide by the absence of circumstances which reduce the offense to

negligent homicide or manslaughter, or which excuse or justify the homicide." Texas Penal Code, Article 1256 (1925).

Both murder and manslaughter required proof of an intent to kill (or constructive proof by showing the use of a deadly weapon *per se*). *Collins v. State*, 299 S.W. 403, 405 (Tex. Crim. App. 1927). Murder required the additional mental element of "malice aforethought" (often referred to simply as "malice"). *Id.* at 404. Malice was traditionally defined as "a state or condition of the mind showing a heart regardless of social duty and fatally bent on mischief." *Id.* Malice has also been defined by what it is not; namely, malice was not present if the crime was committed "under the influence of sudden passion, arising from an adequate cause." *Spearman v. State*, 4 S.W. 586, 587 (Tex. Crim. App. 1887). Before 1927, then, the sudden passion issue was the distinguishing element between murder and manslaughter.

At the time, there existed no offense of criminal attempt. Instead, the Penal Code proscribed assaults "with intent" to commit particularly described offenses. *See* Texas Penal Code, Chapter 4 (1925). One of those offenses was "assault with intent to murder." Texas Penal Code, Article 1160 (1925)(last amended in 1903). At the time, however, there was no "assault with intent to commit manslaughter" offense. *Thurgood v. State*, 220 S.W. 337, 338 (Tex. Crim. App. 1920). Instead, when there was evidence to show sudden passion (i.e. the absence of "malice") for an intended killing in which death did not in fact result, the defendant was entitled to an instruction on aggravated assault. *Id.*

In 1927, the Legislature repealed the articles relating to manslaughter. Session Laws, 40th Leg., S.B. 168, § 3, p. 413 (1927). The Legislature deleted "malice aforethought" from the description of the offense of murder, but it created another subsection in the statute requiring the trial

court to define malice aforethought in all cases and requiring the trial court to instruct the jury that, in the absence of malice aforethought, the sentence assessed could not exceed five years. Session Laws, 40th Leg., S.B. 168, §3a, p. 413; Texas Penal Code, Articles 1256 and 1257b (1927). The Legislature did not, however, change the offense of assault with intent to murder. Assault with intent to murder had its own punishment range: two to fifteen years. Article 1160.[4]

Even so, the failure of the "assault with intent to murder" statute to distinguish between sudden passion murders and other murders was remedied just a few years later. In 1931, the Legislature added to the murder statute instructions concerning "murder without malice." Texas Penal Code, Article 1257c (1931). The new instructions defined the "sudden passion" issue very similarly to the present-day definition and explicitly characterized murder "without malice" as a sudden passion murder. Id. In addition, the Legislature added to the "assault with intent to murder" offense a penalty section relating to offenses committed without malice. Article 1160 (1931). While the punishment range for "assault with intent to murder" (in general) continued to be two to fifteen years, if the jury found that the assault was committed "without malice," the punishment range was one to three years. Id. That offense remained essentially unchanged until the implementation of the "modern" Texas Penal Code in 1974.[5] And from 1974 until 1994, there existed a separate offense

---

[4] Potentially, the language in the murder statute may have limited the upper end of that range to five years. Assault with intent to murder necessarily referenced the murder statute, and the murder statute imposed a five-year cap unless the jury believed that "the defendant was prompted and acted with his malice aforethought."

[5] For cases discussing a defendant's entitlement to a jury instruction on sudden passion (and that were tried shortly before the new Penal Code became effective), see Ray v. State, 515 S.W.2d 664 (Tex. Crim. App. 1974) and Bryant v. State, 482 S.W.2d 270 (Tex. Crim. App. 1972).

of "voluntary manslaughter" — an offense which could be "attempted" under the Penal Code. So, at least since 1931 and probably (except for three years) stretching back to the 1800s, attempt or its equivalent has been available for sudden passion homicides. This long history of legislated leniency toward attempted homicides arising from sudden passion counsels against construing this most recent statutory change as eliminating the sudden passion issue from attempted homicide offenses.

And we should be especially reluctant to change a longstanding interpretation of the law on what is, at best, an ambiguous textual basis, when there appear to be other, more obvious explanations for the statutory change. Two more obvious intended effects of the legislative change here are: (1) to shift the burden of proof on the sudden passion issue to the defendant, and (2) to turn the issue into a punishment phase issue, thereby minimizing the effects of reversible error that might occur in connection with the issue. And in fact, these purposes tend to go hand in hand. While affirmative defenses have been phrased by the Legislature in the modern penal code as guilt phase issues, mitigating factors upon which the defendant has the burden of proof, where such factors actually decrease the grade of the offense if proven, have nearly always been phrased as punishment issues. *See* §15.04(d)(for inchoate offenses, renunciation that does not prevent commission of the object offense); §19.02(d)(sudden passion murder); §20.04(c)(release in a safe place under the aggravated kidnapping statute); §71.02(d) and former §71.05(c)(1993)(for engaging in organized criminal activity, renunciation that does not prevent commission of the object offense). *But see* §§28.06(e), 32.02(d)(determination of value in certain property crimes when the actor shows he has given consideration for or had a legal interest in the property or service in question).

Finally, the State contends that applying the "sudden passion" issue to attempted murder leads to an absurd result: "A defendant charged with attempted murder might lower the degree of

his offense through evidence of sudden passion; however, a defendant with the same *actus reus* and *mens rea*, but charged with aggravated assault, would not have the same avenue open to him." State's brief at 6. But the State provides no reason why such disparate treatment is absurd. That an accused's conduct may violate several penal provisions with differing punishments is hardly uncommon.

Moreover, the State's reasoning would apply equally to aggravated assault and murder. Murder can be reduced in degree by proof of sudden passion, but aggravated assault cannot. Nevertheless, both murder and aggravated assault are reduced in degree for "attempted" versions of those offenses. The inequity perceived by the State inheres in the application of sudden passion to murder, not in its application under the attempt statute. Further, another inequity exists between the murder and aggravated assault offenses. Aggravated assault is listed as an offense that is ineligible for mandatory supervision. Texas Government Code §508.149(a)(6). But, while first degree murder is listed as ineligible, §508.149(a)(2), second degree murder (i.e. murder with sudden passion) is *not* so listed. *See* §508.149, *passim.* Nor is attempted murder listed. *Id.* The State errs in assuming that aggravated assault and attempted murder must somehow be viewed as equivalent offenses.

In fact, two absurd results would occur if the State's interpretation were adopted. One is that, when sudden passion is present, the attempted and object offenses would be felonies of the same degree, a variance from the result that the Legislature appears to have intended when it provided that an attempted offense would be one degree lower than the completed offense. Another absurd result is that a person would obtain the benefit of the sudden passion issue's submission only if he successfully completed his crime. That result would appear to thwart the Legislature's intent to discourage the completion of criminal activity, which is evidenced by its formulation of lesser

penalties for attempted offenses.

Accordingly, we hold that, if raised by the evidence, the sudden passion issue should be submitted in the punishment phase of an attempted murder prosecution. The judgment of the Court of Appeals is reversed and the case is remanded for proceedings consistent with this opinion.

KELLER, J.

DELIVERED: October 20, 1999
PUBLISH



Court of Criminal Appeals
Box 12308
Capitol Station
Austin, Texas 78711



As Usual, A Whole Other Country.
Official State of Texas Mail
Postage Paid by TxDOT

PRESORTED
FIRST CLASS

AUSTIN
TX
OCT 21'99
PB METER
7207129

U.S. POSTAGE
0.48 1



#075202

LISA ROMBOK
CLERK 5TH COURT OF APPEALS
COURTHOUSE 600 COMMERCE 2ND FLOOR
DALLAS TX 75202

1699-98