COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





MARCUS WHITE,

                                    Appellant,

v.

THE STATE OF TEXAS,

                                    Appellee. 


 §
 
§
 
§
 
§
 
§

§



No. 08-09-00269-CR

Appeal from
409th District Court

of El Paso County, Texas

(TC # 20080D04787)



 

 

 




O P I N I O N

            Marcus White appeals his conviction of murder (Count 1). A jury found Appellant guilty
and assessed his punishment at a $10,000 fine and imprisonment for seventy years.


 For the reasons
that follow, we affirm.
FACTUAL SUMMARY
            The victim, Valentin Ray Rodriguez, and his friends Blake Klimasara and David Medina
attended a party at the home of Alexander Johnson. Appellant, who is a member of the gang, Hated
by Many (HBM), likewise attended the party with other HBM members including, James Templeton,
Jerome (“Jay”) Babers, and “White” Mike Romero. 
            Klimasara saw Appellant talking to Aileen Favela. Favela was the girlfriend of one of
Rodriguez’s close friends, Adam. After they talked for a few minutes, Appellant and Favela kissed. 
Klimasara next saw Rodriguez approach Favela and say something to her, but Klimasara could not
hear what was said. According to Favela, Rodriguez pulled her away from Appellant and spoke
briefly with her. She asked Rodriguez not to tell Adam. After speaking with Favela, Rodriguez
went into the bathroom. Appellant began complaining about Rodriguez to a friend while repeatedly
using the term “cock block.” When Rodriguez returned, he heard Appellant refer to him as “the guy
that cock blocked” him. Rodriguez and Appellant began to argue loudly and Medina pulled
Rodriguez away, telling him to calm down and be quiet. Appellant’s friends began hitting Rodriguez
and Medina, so Medina helped him get out of the house. Once outside, Appellant hit Rodriguez and
he fell onto the sidewalk, striking the back of his head and knocking him unconscious. Several
people began viciously kicking and punching Rodriguez for one or two minutes before his friends
could stop the beating and carry the victim to a car. Medina identified Appellant as one of the people
who participated in beating Rodriguez. Medina and other friends took Rodriguez to his apartment
where they tried to treat his injuries. Some of the friends stayed awake to watch over Rodriguez until
3 or 4 in the morning, but they finally went to sleep because they thought Rodriguez would be okay. 
When Medina got up at 9 a.m., he found that Rodriguez was not responsive so he called 911. One
of the paramedics who responded to the scene offered his opinion that Rodriguez had been dead for
a couple of hours.
            Dr. Paul Shrode performed the autopsy. The external examination revealed multiple areas
of trauma. The face was swollen, the left eye was swollen shut, and there was bruising on the left
side of the forehead. Dr. Shrode found eight to ten contusions on the back, as well as bruising on
the right hand and the arms. The contusions found on Rodriguez’s body are indicative of impact
sites. The external examination also revealed a large impact site on the back of the head and
additional abrasions on the head indicating multiple impacts.
            During the internal examination of the torso, Dr. Shrode found deep-tissue bruising to the
rib cage and along the inside of the spine as well as between the shoulder blades. The deep tissue
hemorrhage to the area between the shoulder blades could only be caused by a significant amount
of force. He also found deep-tissue trauma to the base of base of the head, down the spinal column,
and in the lower back around the kidneys. Injuries to the throat indicated that the victim had received
a blow to the throat. Both the heart and lungs had suffered deep tissue trauma consistent with a
severe beating. Internal examination of the neck revealed that Rodriguez had sustained an
atlantooccipital (AO) dislocation which meant that the connection between the skull and upper part
of the spinal cord had been ruptured. In his opinion, the AO dislocation could have been caused by
multiple assailants kicking the victim in the head. When he examined the skull and brain,
Dr. Shrode found a skull fracture on the back of the skull, hemorrhaging under the scalp, and
significant brain injury. Given that the skull fracture occurred in a dense part of the bone, Dr. Shrode
concluded that it would have taken a substantial amount of force to fracture the skull. The injury
was consistent with the victim having been knocked to the ground by his assailant and striking his
head forcefully on cement or by the victim being repeatedly kicked in the head while on the cement. 
He added that the first scenario was more likely to have caused the skull fracture. Dr. Shrode
concluded that the cause of death was blunt force trauma to the head. The trauma to the victim’s
heart, lungs, and brain was serious bodily injury under the legal definition. Likewise, the AO
dislocation could cause neurogenic shock and constituted serious bodily injury. He also testified that
if the injuries suffered by the victim had been caused by punching, kicking, or stomping, the injuries
had been inflicted by deadly weapons. 
LEGAL SUFFICIENCY
            In Issue One, Appellant challenges the legal and factual sufficiency of the evidence
supporting his conviction. The Court of Criminal Appeals decided in Brooks v. State that the
Jackson v. Virginia


 standard is the only standard a reviewing court should apply in determining
whether the evidence is sufficient to support each element of a criminal offense that the State is
required to prove beyond a reasonable doubt. Brooks v. State, 323 S.W.3d 893, 895 (Tex.Crim.App.
2010). Accordingly, we will limit our review to Appellant’s legal sufficiency challenge.
            When assessing the sufficiency of the evidence to support a criminal conviction, we consider
all the evidence in the light most favorable to the verdict and determine whether, based on that
evidence and reasonable inferences therefrom, a rational juror could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. at 318-19;
Villarreal v. State, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009); Hooper v. State, 214 S.W.3d 9, 13
(Tex.Crim.App. 2007). We give deference to “the responsibility of the trier of fact fairly to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.” Jackson, 443 U.S. at 318-19; Klein v. State, 273 S.W.3d 297, 302
(Tex.Crim.App. 2008). We consider all of the admitted evidence, whether it was admissible or
inadmissible. Clayton v. State, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); Wilson v. State, 7
S.W.3d 136, 141 (Tex.Crim.App. 1999). The introduction of conflicting evidence does not render
the evidence insufficient. Matchett v. State, 941 S.W.2d 922, 936 (Tex.Crim.App. 1996). When the
record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor
of the prosecution and therefore defer to that determination. Clayton, 235 S.W.3d at 778. Similarly,
as fact finder, the jury is entitled to judge the credibility of the witnesses, and can choose to believe
all, some, or none of the testimony presented by the parties. Chambers v. State, 805 S.W.2d 459,
461 (Tex.Crim.App. 1991).
Applicable Law
            Count 1 of the indictment charged Appellant with murder under Section 19.02(b)(2) of the
Penal Code. To commit murder under that section, the defendant must intend to cause serious
bodily injury and commit an act clearly dangerous to human life that causes the death of an
individual. Tex.Penal Code Ann. § 19.02(b)(2)(West 2011); Mims v. State, 3 S.W.3d 923, 924
(Tex.Crim.App. 1999). In Paragraphs A through F, Count 1 of the indictment alleged that Appellant,
acting with the intent to cause serious bodily injury to Rodriguez, committed an act clearly dangerous
to human life that caused the death of Rodriguez, specifically: 
[Paragraph A] striking the victim about the body and head with the Appellant’s foot;
[Paragraph B] chasing and assaulting the victim in concert with other individuals; 
[Paragraph C] striking the victim about the head with the Appellant’s hand;
[Paragraph D] striking the victim about the body with the Appellant’s hand;
[Paragraph E] kicking the victim about the head with the Appellant’s foot; or
[Paragraph F] kicking the victim about the body with the Appellant’s foot. 
The charge of the court tracked the indictment. 
            The charge also included an instruction on the law of parties and the application paragraph
permitted the jury to find Appellant guilty as a principal actor or as a party. Under the law of parties,
a person is criminally responsible as a party to an offense if the offense is committed by his own
conduct, by the conduct of another for which he is criminally responsible, or by both. Tex.Penal
Code Ann. § 7.01(a)(West 2011). The jury found Appellant guilty of Count 1 as charged in the
indictment. Because the charge authorized the jury to convict on alternative theories, the verdict will
be upheld if the evidence is sufficient to support either theory. Sorto v. State, 173 S.W.3d 469, 472
(Tex.Crim.App. 2005).
Guilt as a Principal Actor
            Appellant contends that the State failed to prove each element of the offense, including his
identity as the perpetrator. To obtain a conviction under the theory of murder alleged, the State had
to prove that: (1) Appellant committed an act with intent to cause serious bodily injury; (2) this
act was “objectively clearly dangerous to human life;” and (3) this act caused Rodriguez’s death. 
Lugo-Lugo v. State, 650 S.W.2d 72, 81 (Tex.Crim.App. 1983).
Identity
            Jacob Bell testified that he was outside when he saw Rodriguez run from the house as he was
being chased by Appellant and others. Appellant was at the front of the group and he caught up with
Rodriguez first. Rodriguez turned to look back and Appellant struck him which caused Rodriguez
to fall backward and strike his head on the sidewalk. Several witnesses testified that Rodriguez was
unconscious after his head hit the sidewalk, but Bell testified that Rodriguez covered up to protect
himself. After Rodriguez fell, the rest of the pursuers caught up and all of them began kicking,
stomping, and punching Rodriguez while he remained on the ground. Bell identified Appellant as
one of the individuals who had punched, kicked, and stomped on Rodriguez’s head and body. The
beating lasted for one or two minutes. Similarly, David Medina identified Appellant as being one
of the assailants who punched and kicked Rodriguez while he was on the ground unconscious. 
Appellant made statements after the assault indicating that he had gotten into a physical altercation
with Rodriguez. Diana Cruz testified that she left the party after Appellant and the victim argued
inside of the house but she returned later to retrieve a jacket. Appellant told her that he had gotten
into a fight with Rodriguez and that he had “stuck him and he passed out.” We conclude that the
evidence is sufficient to establish Appellant’s identity as a principal actor in the offense.
Intent to Cause Serious Bodily Injury
            Intent can be inferred from the acts, words, and conduct of the defendant. Patrick v. State,
906 S.W.2d 481, 487 (Tex.Crim.App.1995). It may also be inferred from the manner in which the
offense was committed, the nature of the wounds inflicted, and the relative size and strength of the
parties. Id. To determine culpability for an offense, a jury is entitled to consider events occurring
before, during, and after the commission of the offense. Pitonyak v. State, 253 S.W.3d 834, 844
(Tex.App.--Austin 2008, pet. ref’d). “Serious bodily injury” means bodily injury that creates a
substantial risk of death, or that causes death, serious permanent disfigurement, or protracted loss
or impairment of the function of any bodily member or organ. Tex.Penal Code Ann. § 1.07(46).
            Several witnesses testified that Appellant became angry with Rodriguez because he spoke 
to Aileen Favela, the young woman Appellant had been kissing, and she left the party. Appellant
began complaining loudly about Rodriguez’s interference and calling him a “cock blocker.” This
anger provided Appellant with a motive to harm Appellant. As further evidence that this anger
motivated Appellant’s actions, Appellant went back inside of the house after the assault and said,
“Why did Ray have to be a cock block?” 
            In addition to the evidence of motive and its relationship to intent, the jury could also
consider the manner in which the offense was committed. Jacob Bell saw Rodriguez fall and hit his
head on the sidewalk after Appellant struck him. Although Bell testified that Rodriguez had some
degree of consciousness when Appellant and the others began assaulting him, other witnesses said
Rodriguez was unconscious and defenseless. Appellant and the other assailants kicked, stomped,
and punched Rodriguez about the head and body. The assault stopped only because several of
Rodriguez’s friends pulled the attackers away and dragged Rodriguez to a car. The jury could have
believed that Appellant would have continued to assault Rodriguez if others had not put a stop to it.
            A jury may also infer intent from the nature of the wounds inflicted. It is undisputed that
Rodriguez suffered a severe beating at the hands and feet of Appellant and his associates. In addition
to the blunt force trauma to the head and brain which caused the victim’s death, Rodriguez also
suffered an AO dislocation and significant injuries to his heart and lungs indicating the viciousness
and violence of the attack. Given Appellant’s anger at Rodriguez immediately preceding the attack,
the manner in which the offense was committed, and the nature of the wounds inflicted on the
defenseless victim, a rational jury could have found beyond a reasonable doubt that Appellant
kicked, stomped, and kicked Rodriguez with intent to cause serious bodily injury. See Buchanan
v. State, No. 08-06-00203-CR, 2008 WL 3585900, at *2 (Tex.App.--El Paso, Aug. 14, 2008, no
pet.)(not designated for publication)(finding the evidence sufficient to support jury’s determination
that defendant intended to cause serious bodily injury where he and another individual kicked and
punched the victim and the victim suffered injuries to his brain as a result of blunt force trauma).
 

An Act Clearly Dangerous to Human Life
that Caused the Victim’s Death

            An act clearly dangerous to human life is one that creates a substantial risk of death. Depauw
v. State, 658 S.W.2d 628, 634 (Tex.App.--Amarillo 1983, pet. ref’d). The test for determining
whether an act is clearly dangerous to human life is an objective one. Lugo-Lugo, 650 S.W.2d at 81. 
To be clearly dangerous to human life, the act committed need only threaten or risk a resulting death. 
Id. at 88.
            The jury heard evidence that Appellant struck Rodriguez with sufficient force to cause him
to fall backwards and strike his head on the sidewalk. Appellant and his associates descended on
the unconscious or nearly-unconscious victim and began to stomp, kick, and punch him for one to
two minutes. Many of the blows were directed at the victim’s head while others were directed at his
torso, throat, and neck. Dr. Shrode specifically testified regarding the victim’s injuries and he
offered his expert opinion that the injuries were consistent with being punched, kicked, and stomped
and with a severe beating. He opined that the AO dislocation and the severe deep tissue trauma to
Rodriguez’s heart, lung, and brain constituted serious bodily injury that could have resulted in death,
but the actual cause of death was blunt-force trauma to the head. The evidence is sufficient to
support the jury’s determination that Appellant committed an act clearly dangerous to human life that
caused the victim’s death. See Depauw, 658 S.W.2d at 634 (finding evidence sufficient to prove that
defendant committed an act clearly dangerous to human life where the defendant kicked the victim
in the head, stomach, and chest, the deceased had sustained a severe fracture of the skull, as well as
other injuries to the head and body, and the injuries to the skull were caused by the deceased being
struck by a blunt instrument with “a severe and tremendous force”); Buchanan, 2008 WL 3585900,
at *3 (holding evidence sufficient to prove that the defendant, with intent to cause serious bodily
injury, committed an act clearly dangerous to human life that caused the victim’s death where he
punched and kicked the victim, and the forensic expert testified that the victim suffered blunt force
trauma to the head and the blows to the victim’s body and head were forceful enough to cause
serious bodily injury and death). Having concluded that the evidence is sufficient to support
Appellant’s conviction as a principal actor, we need not address whether it is also sufficient to
support his guilt as a party. Issue One is overruled.
EXTRANEOUS OFFENSE AND GANG EVIDENCE
            Issues Two and Three are related to the admission of extraneous offense and gang evidence. 
In Issue Two, Appellant contends the trial court abused its discretion by admitting State’s Exhibit
183, a surveillance video from Providence Hospital, because it showed Appellant and other HBM
members assaulting an individual at the hospital. Likewise, in Issue Three, he challenges the
admission of State’s Exhibit 221, a YouTube video which shows Appellant and other HBM
members throwing gang signs, holding weapons, and tagging property with graffiti. The arguments
raised against these exhibits are based on Rule 404(b) and Rule 403 of the Texas Rules of Evidence.
Standard of Review
            We review the trial court’s admission of extraneous offense evidence for an abuse of
discretion. Prible v. State, 175 S.W.3d 724, 731 (Tex.Crim.App. 2005); Moses v. State, 105 S.W.3d
622, 627 (Tex.Crim.App. 2003). If the trial court’s ruling is within the zone of reasonable
disagreement, there is no abuse of discretion. Id. 
Underlying Facts
            Counts 2 and 3 of the indictment charged Appellant with engaging in organized criminal
activity. Count 2 alleged that Appellant, with the intent to participate as a member of a criminal
street gang, committed the aggravated assault of Rodriguez causing serious bodily injury. Similarly,
Count 3 alleged that Appellant, with the requisite intent to participate as a member of a criminal
street gang, committed aggravated assault of Rodriguez with a deadly weapon. A criminal street
gang is defined by the Penal Code as “three or more persons having a common identifying sign or
symbol or an identifiable leadership who continuously or regularly associate in the commission of
criminal activities.” Tex.Penal Code Ann. § 71.01(d)(West 2011). During trial, the State
introduced evidence that Appellant was a member of HBM and it introduced photographs of his
HBM gang tattoos. 
State’s Exhibit 183
            The State contends that Appellant failed to preserve error with respect to State’s Exhibit 183,
and alternatively, any error was cured because Appellant did not object when the same evidence
came in through other witnesses. We agree.
            Roberto Diaz, the Assistant Security Director for Providence Memorial Hospital, testified
about an altercation that occurred in the emergency room waiting area on May 30, 2006. The
hospital surveillance camera recorded the events that took place in the waiting room. Diaz identified
State’s Exhibit 183 as a video recording of the altercation. 
            Prior to the State’s case-in-chief, the trial court granted Appellant’s motion in limine which
sought to prevent the State from presenting evidence of the assault committed at the hospital without
first approaching the bench and obtaining a ruling that the evidence was relevant and its probative
value outweighed any prejudicial effect. When Diaz began testifying about the altercation,
Appellant’s attorney raised only a Rule 404(b) objection which the court overruled. Appellant did
not obtain a running objection. After Diaz testified about his role in the creation of a copy of the
video recording for the police, the State offered the video into evidence. Appellant objected that the
proper predicate had not been established because the State had failed to show that Diaz was the
business records custodian of the video recording. He did not object on either Rule 404(b) or 403
grounds. The trial court overruled the predicate objection and admitted Exhibit 183. At the
conclusion of Diaz’s testimony, the court instructed the jury that it could only consider the evidence
regarding Appellant committing an extraneous offense for the sole purpose of determining
Appellant’s intent to participate as a member of a criminal street gang as alleged in Counts 2 and 3. 
            To complain about the admission of evidence, a party must make a timely and specific
objection. Tex.R.App.P. 33.1; Tex.R.Evid. 103(a)(1). He must also object each time inadmissible
evidence is offered or obtain a running objection. Valle v. State, 109 S.W.3d 500, 509
(Tex.Crim.App. 2003). An error in the admission of evidence is cured where the same evidence
comes in elsewhere without objection. Id.
            Because Appellant did not make a Rule 403 objection at any point during the testimony of
Diaz or when the State actually introduced the exhibit, the Rule 403 complaint is waived. Appellant
did not obtain a running objection based on Rule 404(b) after he first objected to Diaz’s testimony
on the subject of the altercation at the hospital, and he did not raise a Rule 404(b) or 403 objection
when the State offered the video. Consequently, Appellant has waived error.
            Even if Appellant’s initial Rule 404(b) objection could be said to apply to the subsequent
offer of Exhibit 183, Appellant did not object when several other witnesses testified about the
altercation and what could be seen on the video. For example, Christopher Marshall testified
without objection about the assault at Providence Hospital. Following a graduation ceremony, 
Marshall saw some of his friends outnumbered in a fight with Appellant and other people. When
Marshall tried to break up the fight, he suffered injuries to his lip and eye. His friends took him to
the emergency room at Providence. A while later, Appellant and several other people came into the
waiting area and surrounded Marshall and his friends. Someone hit Marshall in the back of the head
and knocked him to the floor. 
            Fabian Parra attended a high school graduation and saw his brother’s friend, Christopher
Marshall, leaving with a busted lip. Parra and his brothers went to the emergency room with
Marshall and he dropped them off before he went to park the vehicle. When Parra walked into the
ER, he saw “a riot” because his brothers and Marshall were fighting members of HBM. Parra knew
Appellant was a member of HBM and he saw Appellant throwing punches. When Parra could not
remember who threw the first punch, he watched State’s Exhibit 183 in the jury’s presence and
identified an HBM member he knew as “Swat” throw the first punch. 
            Officer Joseph Guevara is employed with the El Paso Police Department as a gang
investigator and he responded to the incident at Providence Hospital. Guevara reviewed State’s
Exhibit 183 to determine the identity of the participants and their gang affiliation. He explained that
when an HBM member, Jerome Saunders, is seen putting on a Franklin baseball glove on his right
hand, he is preparing to fight. He also described how State’s Exhibit 183 depicted the members of
HBM positioning themselves for a fight, signaling a countdown just before the fight, and beating
Marshall after they force him to the floor. Appellant could be seen on the video kicking Marshall
after he was taken to the ground by the HBM members. Guevara concluded that the assault appears
to be orchestrated gang activity. 
            Because Appellant failed to object to the testimony of Marshall, Parra, and Guevara about
the assault at Providence Hospital committed by Appellant and other HBM members, any error in
the admission of State’s Exhibit 183 is cured. Valle, 109 S.W.3d at 509 (any error in admission of
witness’s testimony that he was scared for his life about testifying against capital murder defendant
was cured, since defendant failed to object when the witness testified the second time that he was
fearful for his life). We overrule Issue Two.
State’s Exhibit 221
            Andres Sanchez is an El Paso police officer assigned to the gang investigations unit. EPPD
maintains a database of all known gang members in El Paso. The Department utilizes a number of
criteria in determining whether a person can be classified as a member of a criminal street gang,
including being arrested for conduct that is consistent with gang activity with other known gang
members and the use of hand signs, colors, tattoos, letters, and writings (graffiti) that is associated
with a criminal street gang. Sanchez testified that Appellant is identified as a member of HBM by
his display of HBM tattoos, his use of HBM hand signs, and for the assaultive conduct Appellant
engaged in with other HBM members at Providence Hospital. 
            The trial court conducted a hearing outside the presence of the jury to determine the
admissibility of State’s Exhibit 221, a YouTube video depicting Appellant and other HBM members
engaging in behavior associated with gang activity. The video shows Appellant and other gang
members wearing HBM colors, displaying AK-47s and MAC-10s, and engaging in tagging. 
Appellant objected that the video contained extraneous offense evidence and was more prejudicial
than probative. The trial court overruled those objections. 
            Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person
to show action in conformity therewith. Tex.R.Evid. 404(b). But it may be admissible for other
purposes, such as proof of motive, opportunity, intent, preparation, plan, or knowledge. Id. For
evidence of other crimes to be admissible, it must be relevant for a purpose other than to show the
character of a person and that he acted in conformity with it. See Tex.R.Evid. 404(b).
            By virtue of Counts 2 and 3, the State had the burden to prove beyond a reasonable doubt that
Appellant acted with intent to participate as a member of a criminal street gang when he committed
the offense of aggravated assault. To carry its burden, the State was required to show that Appellant
and his companions had a common identifying sign or symbol or an identifiable leadership and they
“continuously or regularly associate in the commission of criminal activities.” Tex.Penal Code
Ann. § 71.01(d). Consequently, evidence of Appellant’s gang membership and some extraneous
offenses would be not only relevant, but essential to meet the State’s burden of proof. See
Hernandez v. State, 52 S.W.3d 268, 282 (Tex.App.--Corpus Christi 2001, no pet.)(evidence of
defendant’s gang-related activities was admissible to prove defendant was member of criminal street
gang and regularly engaged in criminal activity, as required for conviction of engaging in organized
criminal activity); Roy v. State, 997 S.W.2d 863, 867 (Tex.App.--Fort Worth 1999, pet. ref’d)(when
a defendant is charged with engaging in organized criminal activity under Section 71.02 of the Penal
Code, the State is entitled to introduce evidence that the defendant was a gang member and regularly
engaged in criminal activities). The trial court did not abuse its discretion by concluding that State’s
Exhibit 221 had relevance apart from character conformity.
            Appellant also claims that State’s Exhibit 221 should have been excluded because the
prejudicial effect outweighed the probative value. Relevant evidence is generally admissible, but
it is properly excluded under Rule 403


 when its probative value is substantially outweighed by the
danger of unfair prejudice. Tex.R.Evid. 403; Casey v. State, 215 S.W.3d 870, 879 (Tex.Crim.App.
2007). In keeping with the presumption of admissibility of relevant evidence, trial courts should
favor admission in close cases. Casey, 215 S.W.3d at 879; Montgomery v. State, 810 S.W.2d 372,
389 (Tex.Crim.App. 1991)(op. on reh’g). The term “probative value” refers to the inherent probative
force of an item of evidence--that is, how strongly it serves to make more or less probable the
existence of a fact of consequence to the litigation--coupled with the proponent’s need for that item
of evidence. Casey, 215 S.W.3d at 879; Gigliobianco v. State, 210 S.W.3d 637, 641 (Tex.Crim.App.
2006). When conducting the balancing test under Rule 403, the trial court determines whether the
probative value of the evidence is substantially outweighed by one of the following countervailing
considerations listed in the rule. Casey, 215 S.W.3d at 879. A trial court must balance (1) the
inherent probative force of the proffered item of evidence along with (2) the proponent’s need for
that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4)
any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency
of the evidence to be given undue weight by a jury that has not been equipped to evaluate the
probative force of the evidence, and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time or repeat evidence already admitted. Gigliobianco, 210
S.W.3d at 641-42.
            State’s Exhibit 221 had substantial probative value because it strongly tended to prove one
of the elements of Counts 2 and 3, namely, that Appellant acted with intent to participate in a
criminal street gang. For this same reason, the State had a considerable need for this evidence. Any
potential to create undue prejudice would have been counteracted by the trial court’s limiting
instruction which restricted the jury’s consideration of the gang activity evidence to the intent
element of Counts 2 and 3. We conclude that the trial court did not abuse its discretion by overruling
Appellant’s objections and admitting State’s Exhibit 221. We overrule Issue Three and affirm the
judgment of the trial court.


October 12, 2011                                                         
                                                                                    ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, J., and Chew, C.J. (Senior)

(Do Not Publish)