COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| MARCUS WHITE, | § | No. 08-09-00269-CR |
| Appellant, | § | Appeal from |
| v. | § | 409th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20080D04787) |
| | § | |

**O P I N I O N**

Marcus White appeals his conviction of murder (Count 1). A jury found Appellant guilty and assessed his punishment at a $10,000 fine and imprisonment for seventy years.[1] For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

The victim, Valentin Ray Rodriguez, and his friends Blake Klimasara and David Medina attended a party at the home of Alexander Johnson. Appellant, who is a member of the gang, Hated by Many (HBM), likewise attended the party with other HBM members including, James Templeton, Jerome ("Jay") Babers, and "White" Mike Romero.

Klimasara saw Appellant talking to Aileen Favela. Favela was the girlfriend of one of Rodriguez's close friends, Adam. After they talked for a few minutes, Appellant and Favela kissed. Klimasara next saw Rodriguez approach Favela and say something to her, but Klimasara could not

---

[1] A grand jury returned a five-count indictment against Appellant. The indictment alleged murder in Count 1, and lesser-included offenses in Counts 2 through 5. The indictment charged Appellant with engaging in organized criminal activity in Counts 2 and 3, aggravated assault in Count 4, and aggravated assault causing bodily injury in Count 5. Because the jury found Appellant guilty of murder, they did not return a verdict on the remaining counts.

hear what was said. According to Favela, Rodriguez pulled her away from Appellant and spoke briefly with her. She asked Rodriguez not to tell Adam. After speaking with Favela, Rodriguez went into the bathroom. Appellant began complaining about Rodriguez to a friend while repeatedly using the term "cock block." When Rodriguez returned, he heard Appellant refer to him as "the guy that cock blocked" him. Rodriguez and Appellant began to argue loudly and Medina pulled Rodriguez away, telling him to calm down and be quiet. Appellant's friends began hitting Rodriguez and Medina, so Medina helped him get out of the house. Once outside, Appellant hit Rodriguez and he fell onto the sidewalk, striking the back of his head and knocking him unconscious. Several people began viciously kicking and punching Rodriguez for one or two minutes before his friends could stop the beating and carry the victim to a car. Medina identified Appellant as one of the people who participated in beating Rodriguez. Medina and other friends took Rodriguez to his apartment where they tried to treat his injuries. Some of the friends stayed awake to watch over Rodriguez until 3 or 4 in the morning, but they finally went to sleep because they thought Rodriguez would be okay. When Medina got up at 9 a.m., he found that Rodriguez was not responsive so he called 911. One of the paramedics who responded to the scene offered his opinion that Rodriguez had been dead for a couple of hours.

Dr. Paul Shrode performed the autopsy. The external examination revealed multiple areas of trauma. The face was swollen, the left eye was swollen shut, and there was bruising on the left side of the forehead. Dr. Shrode found eight to ten contusions on the back, as well as bruising on the right hand and the arms. The contusions found on Rodriguez's body are indicative of impact sites. The external examination also revealed a large impact site on the back of the head and additional abrasions on the head indicating multiple impacts.

During the internal examination of the torso, Dr. Shrode found deep-tissue bruising to the

rib cage and along the inside of the spine as well as between the shoulder blades. The deep tissue hemorrhage to the area between the shoulder blades could only be caused by a significant amount of force. He also found deep-tissue trauma to the base of base of the head, down the spinal column, and in the lower back around the kidneys. Injuries to the throat indicated that the victim had received a blow to the throat. Both the heart and lungs had suffered deep tissue trauma consistent with a severe beating. Internal examination of the neck revealed that Rodriguez had sustained an atlantooccipital (AO) dislocation which meant that the connection between the skull and upper part of the spinal cord had been ruptured. In his opinion, the AO dislocation could have been caused by multiple assailants kicking the victim in the head. When he examined the skull and brain, Dr. Shrode found a skull fracture on the back of the skull, hemorrhaging under the scalp, and significant brain injury. Given that the skull fracture occurred in a dense part of the bone, Dr. Shrode concluded that it would have taken a substantial amount of force to fracture the skull. The injury was consistent with the victim having been knocked to the ground by his assailant and striking his head forcefully on cement or by the victim being repeatedly kicked in the head while on the cement. He added that the first scenario was more likely to have caused the skull fracture. Dr. Shrode concluded that the cause of death was blunt force trauma to the head. The trauma to the victim's heart, lungs, and brain was serious bodily injury under the legal definition. Likewise, the AO dislocation could cause neurogenic shock and constituted serious bodily injury. He also testified that if the injuries suffered by the victim had been caused by punching, kicking, or stomping, the injuries had been inflicted by deadly weapons.

## LEGAL SUFFICIENCY

In Issue One, Appellant challenges the legal and factual sufficiency of the evidence supporting his conviction. The Court of Criminal Appeals decided in *Brooks v. State* that the

*Jackson v. Virginia*[2] standard is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010). Accordingly, we will limit our review to Appellant's legal sufficiency challenge.

When assessing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 318-19; *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We give deference to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 318-19; *Klein v. State*, 273 S.W.3d 297, 302 (Tex.Crim.App. 2008). We consider all of the admitted evidence, whether it was admissible or inadmissible. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999). The introduction of conflicting evidence does not render the evidence insufficient. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex.Crim.App. 1996). When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton*, 235 S.W.3d at 778. Similarly, as fact finder, the jury is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*Applicable Law*

Count 1 of the indictment charged Appellant with murder under Section 19.02(b)(2) of the Penal Code. To commit murder under that section, the defendant must intend to cause serious bodily injury and commit an act clearly dangerous to human life that causes the death of an individual. TEX.PENAL CODE ANN. § 19.02(b)(2)(West 2011); *Mims v. State*, 3 S.W.3d 923, 924 (Tex.Crim.App. 1999). In Paragraphs A through F, Count 1 of the indictment alleged that Appellant, acting with the intent to cause serious bodily injury to Rodriguez, committed an act clearly dangerous to human life that caused the death of Rodriguez, specifically:

[Paragraph A] striking the victim about the body and head with the Appellant's foot;

[Paragraph B] chasing and assaulting the victim in concert with other individuals;

[Paragraph C] striking the victim about the head with the Appellant's hand;

[Paragraph D] striking the victim about the body with the Appellant's hand;

[Paragraph E] kicking the victim about the head with the Appellant's foot; or

[Paragraph F] kicking the victim about the body with the Appellant's foot.

The charge of the court tracked the indictment.

The charge also included an instruction on the law of parties and the application paragraph permitted the jury to find Appellant guilty as a principal actor or as a party. Under the law of parties, a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX.PENAL CODE ANN. § 7.01(a)(West 2011). The jury found Appellant guilty of Count 1 as charged in the indictment. Because the charge authorized the jury to convict on alternative theories, the verdict will be upheld if the evidence is sufficient to support either theory. *Sorto v. State*, 173 S.W.3d 469, 472 (Tex.Crim.App. 2005).

*Guilt as a Principal Actor*

Appellant contends that the State failed to prove each element of the offense, including his identity as the perpetrator. To obtain a conviction under the theory of murder alleged, the State had to prove that: (1) Appellant committed an act with intent to cause serious bodily injury; (2) this act was "objectively clearly dangerous to human life;" and (3) this act caused Rodriguez's death. *Lugo-Lugo v. State*, 650 S.W.2d 72, 81 (Tex.Crim.App. 1983).

**Identity**

Jacob Bell testified that he was outside when he saw Rodriguez run from the house as he was being chased by Appellant and others. Appellant was at the front of the group and he caught up with Rodriguez first. Rodriguez turned to look back and Appellant struck him which caused Rodriguez to fall backward and strike his head on the sidewalk. Several witnesses testified that Rodriguez was unconscious after his head hit the sidewalk, but Bell testified that Rodriguez covered up to protect himself. After Rodriguez fell, the rest of the pursuers caught up and all of them began kicking, stomping, and punching Rodriguez while he remained on the ground. Bell identified Appellant as one of the individuals who had punched, kicked, and stomped on Rodriguez's head and body. The beating lasted for one or two minutes. Similarly, David Medina identified Appellant as being one of the assailants who punched and kicked Rodriguez while he was on the ground unconscious. Appellant made statements after the assault indicating that he had gotten into a physical altercation with Rodriguez. Diana Cruz testified that she left the party after Appellant and the victim argued inside of the house but she returned later to retrieve a jacket. Appellant told her that he had gotten into a fight with Rodriguez and that he had "stuck him and he passed out." We conclude that the evidence is sufficient to establish Appellant's identity as a principal actor in the offense.

**Intent to Cause Serious Bodily Injury**

Intent can be inferred from the acts, words, and conduct of the defendant. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App.1995). It may also be inferred from the manner in which the offense was committed, the nature of the wounds inflicted, and the relative size and strength of the parties. *Id.* To determine culpability for an offense, a jury is entitled to consider events occurring before, during, and after the commission of the offense. *Pitonyak v. State*, 253 S.W.3d 834, 844 (Tex.App.--Austin 2008, pet. ref'd). "Serious bodily injury" means bodily injury that creates a substantial risk of death, or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. TEX.PENAL CODE ANN. § 1.07(46).

Several witnesses testified that Appellant became angry with Rodriguez because he spoke to Aileen Favela, the young woman Appellant had been kissing, and she left the party. Appellant began complaining loudly about Rodriguez's interference and calling him a "cock blocker." This anger provided Appellant with a motive to harm Appellant. As further evidence that this anger motivated Appellant's actions, Appellant went back inside of the house after the assault and said, "Why did Ray have to be a cock block?"

In addition to the evidence of motive and its relationship to intent, the jury could also consider the manner in which the offense was committed. Jacob Bell saw Rodriguez fall and hit his head on the sidewalk after Appellant struck him. Although Bell testified that Rodriguez had some degree of consciousness when Appellant and the others began assaulting him, other witnesses said Rodriguez was unconscious and defenseless. Appellant and the other assailants kicked, stomped, and punched Rodriguez about the head and body. The assault stopped only because several of Rodriguez's friends pulled the attackers away and dragged Rodriguez to a car. The jury could have believed that Appellant would have continued to assault Rodriguez if others had not put a stop to it.

A jury may also infer intent from the nature of the wounds inflicted. It is undisputed that

Rodriguez suffered a severe beating at the hands and feet of Appellant and his associates. In addition to the blunt force trauma to the head and brain which caused the victim's death, Rodriguez also suffered an AO dislocation and significant injuries to his heart and lungs indicating the viciousness and violence of the attack. Given Appellant's anger at Rodriguez immediately preceding the attack, the manner in which the offense was committed, and the nature of the wounds inflicted on the defenseless victim, a rational jury could have found beyond a reasonable doubt that Appellant kicked, stomped, and kicked Rodriguez with intent to cause serious bodily injury. *See Buchanan v. State*, No. 08-06-00203-CR, 2008 WL 3585900, at *2 (Tex.App.--El Paso, Aug. 14, 2008, no pet.)(not designated for publication)(finding the evidence sufficient to support jury's determination that defendant intended to cause serious bodily injury where he and another individual kicked and punched the victim and the victim suffered injuries to his brain as a result of blunt force trauma).

## An Act Clearly Dangerous to Human Life
## that Caused the Victim's Death

An act clearly dangerous to human life is one that creates a substantial risk of death. *Depauw v. State*, 658 S.W.2d 628, 634 (Tex.App.--Amarillo 1983, pet. ref'd). The test for determining whether an act is clearly dangerous to human life is an objective one. *Lugo-Lugo*, 650 S.W.2d at 81. To be clearly dangerous to human life, the act committed need only threaten or risk a resulting death. *Id.* at 88.

The jury heard evidence that Appellant struck Rodriguez with sufficient force to cause him to fall backwards and strike his head on the sidewalk. Appellant and his associates descended on the unconscious or nearly-unconscious victim and began to stomp, kick, and punch him for one to two minutes. Many of the blows were directed at the victim's head while others were directed at his torso, throat, and neck. Dr. Shrode specifically testified regarding the victim's injuries and he offered his expert opinion that the injuries were consistent with being punched, kicked, and stomped and with a severe beating. He opined that the AO dislocation and the severe deep tissue trauma to Rodriguez's heart, lung, and brain constituted serious bodily injury that could have resulted in death, but the actual cause of death was blunt-force trauma to the head. The evidence is sufficient to support the jury's determination that Appellant committed an act clearly dangerous to human life that caused the victim's death. *See Depauw*, 658 S.W.2d at 634 (finding evidence sufficient to prove that defendant committed an act clearly dangerous to human life where the defendant kicked the victim in the head, stomach, and chest, the deceased had sustained a severe fracture of the skull, as well as other injuries to the head and body, and the injuries to the skull were caused by the deceased being struck by a blunt instrument with "a severe and tremendous force"); *Buchanan*, 2008 WL 3585900, at *3 (holding evidence sufficient to prove that the defendant, with intent to cause serious bodily

injury, committed an act clearly dangerous to human life that caused the victim's death where he punched and kicked the victim, and the forensic expert testified that the victim suffered blunt force trauma to the head and the blows to the victim's body and head were forceful enough to cause serious bodily injury and death).  Having concluded that the evidence is sufficient to support Appellant's conviction as a principal actor, we need not address whether it is also sufficient to support his guilt as a party.  Issue One is overruled.

## EXTRANEOUS OFFENSE AND GANG EVIDENCE

Issues Two and Three are related to the admission of extraneous offense and gang evidence. In Issue Two, Appellant contends the trial court abused its discretion by admitting State's Exhibit 183, a surveillance video from Providence Hospital, because it showed Appellant and other HBM members assaulting an individual at the hospital.  Likewise, in Issue Three, he challenges the admission of State's Exhibit 221, a YouTube video which shows Appellant and other HBM members throwing gang signs, holding weapons, and tagging property with graffiti.  The arguments raised against these exhibits are based on Rule 404(b) and Rule 403 of the Texas Rules of Evidence.

### Standard of Review

We review the trial court's admission of extraneous offense evidence for an abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex.Crim.App. 2005); *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003).  If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion.  *Id*.

### Underlying Facts

Counts 2 and 3 of the indictment charged Appellant with engaging in organized criminal activity.  Count 2 alleged that Appellant, with the intent to participate as a member of a criminal street gang, committed the aggravated assault of Rodriguez causing serious bodily injury.  Similarly,

Count 3 alleged that Appellant, with the requisite intent to participate as a member of a criminal street gang, committed aggravated assault of Rodriguez with a deadly weapon. A criminal street gang is defined by the Penal Code as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." TEX.PENAL CODE ANN. § 71.01(d)(West 2011). During trial, the State introduced evidence that Appellant was a member of HBM and it introduced photographs of his HBM gang tattoos.

*State's Exhibit 183*

The State contends that Appellant failed to preserve error with respect to State's Exhibit 183, and alternatively, any error was cured because Appellant did not object when the same evidence came in through other witnesses. We agree.

Roberto Diaz, the Assistant Security Director for Providence Memorial Hospital, testified about an altercation that occurred in the emergency room waiting area on May 30, 2006. The hospital surveillance camera recorded the events that took place in the waiting room. Diaz identified State's Exhibit 183 as a video recording of the altercation.

Prior to the State's case-in-chief, the trial court granted Appellant's motion in limine which sought to prevent the State from presenting evidence of the assault committed at the hospital without first approaching the bench and obtaining a ruling that the evidence was relevant and its probative value outweighed any prejudicial effect. When Diaz began testifying about the altercation, Appellant's attorney raised only a Rule 404(b) objection which the court overruled. Appellant did not obtain a running objection. After Diaz testified about his role in the creation of a copy of the video recording for the police, the State offered the video into evidence. Appellant objected that the proper predicate had not been established because the State had failed to show that Diaz was the

business records custodian of the video recording. He did not object on either Rule 404(b) or 403 grounds. The trial court overruled the predicate objection and admitted Exhibit 183. At the conclusion of Diaz's testimony, the court instructed the jury that it could only consider the evidence regarding Appellant committing an extraneous offense for the sole purpose of determining Appellant's intent to participate as a member of a criminal street gang as alleged in Counts 2 and 3.

To complain about the admission of evidence, a party must make a timely and specific objection. TEX.R.APP.P. 33.1; TEX.R.EVID. 103(a)(1). He must also object each time inadmissible evidence is offered or obtain a running objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex.Crim.App. 2003). An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Id.*

Because Appellant did not make a Rule 403 objection at any point during the testimony of Diaz or when the State actually introduced the exhibit, the Rule 403 complaint is waived. Appellant did not obtain a running objection based on Rule 404(b) after he first objected to Diaz's testimony on the subject of the altercation at the hospital, and he did not raise a Rule 404(b) or 403 objection when the State offered the video. Consequently, Appellant has waived error.

Even if Appellant's initial Rule 404(b) objection could be said to apply to the subsequent offer of Exhibit 183, Appellant did not object when several other witnesses testified about the altercation and what could be seen on the video. For example, Christopher Marshall testified without objection about the assault at Providence Hospital. Following a graduation ceremony, Marshall saw some of his friends outnumbered in a fight with Appellant and other people. When Marshall tried to break up the fight, he suffered injuries to his lip and eye. His friends took him to the emergency room at Providence. A while later, Appellant and several other people came into the waiting area and surrounded Marshall and his friends. Someone hit Marshall in the back of the head

and knocked him to the floor.

Fabian Parra attended a high school graduation and saw his brother's friend, Christopher Marshall, leaving with a busted lip. Parra and his brothers went to the emergency room with Marshall and he dropped them off before he went to park the vehicle. When Parra walked into the ER, he saw "a riot" because his brothers and Marshall were fighting members of HBM. Parra knew Appellant was a member of HBM and he saw Appellant throwing punches. When Parra could not remember who threw the first punch, he watched State's Exhibit 183 in the jury's presence and identified an HBM member he knew as "Swat" throw the first punch.

Officer Joseph Guevara is employed with the El Paso Police Department as a gang investigator and he responded to the incident at Providence Hospital. Guevara reviewed State's Exhibit 183 to determine the identity of the participants and their gang affiliation. He explained that when an HBM member, Jerome Saunders, is seen putting on a Franklin baseball glove on his right hand, he is preparing to fight. He also described how State's Exhibit 183 depicted the members of HBM positioning themselves for a fight, signaling a countdown just before the fight, and beating Marshall after they force him to the floor. Appellant could be seen on the video kicking Marshall after he was taken to the ground by the HBM members. Guevara concluded that the assault appears to be orchestrated gang activity.

Because Appellant failed to object to the testimony of Marshall, Parra, and Guevara about the assault at Providence Hospital committed by Appellant and other HBM members, any error in the admission of State's Exhibit 183 is cured. *Valle*, 109 S.W.3d at 509 (any error in admission of witness's testimony that he was scared for his life about testifying against capital murder defendant was cured, since defendant failed to object when the witness testified the second time that he was fearful for his life). We overrule Issue Two.

*State's Exhibit 221*

Andres Sanchez is an El Paso police officer assigned to the gang investigations unit. EPPD maintains a database of all known gang members in El Paso. The Department utilizes a number of criteria in determining whether a person can be classified as a member of a criminal street gang, including being arrested for conduct that is consistent with gang activity with other known gang members and the use of hand signs, colors, tattoos, letters, and writings (graffiti) that is associated with a criminal street gang. Sanchez testified that Appellant is identified as a member of HBM by his display of HBM tattoos, his use of HBM hand signs, and for the assaultive conduct Appellant engaged in with other HBM members at Providence Hospital.

The trial court conducted a hearing outside the presence of the jury to determine the admissibility of State's Exhibit 221, a YouTube video depicting Appellant and other HBM members engaging in behavior associated with gang activity. The video shows Appellant and other gang members wearing HBM colors, displaying AK-47s and MAC-10s, and engaging in tagging. Appellant objected that the video contained extraneous offense evidence and was more prejudicial than probative. The trial court overruled those objections.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. TEX.R.EVID. 404(b). But it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, or knowledge. *Id.* For evidence of other crimes to be admissible, it must be relevant for a purpose other than to show the character of a person and that he acted in conformity with it. *See* TEX.R.EVID. 404(b).

By virtue of Counts 2 and 3, the State had the burden to prove beyond a reasonable doubt that Appellant acted with intent to participate as a member of a criminal street gang when he committed the offense of aggravated assault. To carry its burden, the State was required to show that Appellant

and his companions had a common identifying sign or symbol or an identifiable leadership and they "continuously or regularly associate in the commission of criminal activities." TEX.PENAL CODE ANN. § 71.01(d). Consequently, evidence of Appellant's gang membership and some extraneous offenses would be not only relevant, but essential to meet the State's burden of proof. *See Hernandez v. State*, 52 S.W.3d 268, 282 (Tex.App.--Corpus Christi 2001, no pet.)(evidence of defendant's gang-related activities was admissible to prove defendant was member of criminal street gang and regularly engaged in criminal activity, as required for conviction of engaging in organized criminal activity); *Roy v. State*, 997 S.W.2d 863, 867 (Tex.App.--Fort Worth 1999, pet. ref'd)(when a defendant is charged with engaging in organized criminal activity under Section 71.02 of the Penal Code, the State is entitled to introduce evidence that the defendant was a gang member and regularly engaged in criminal activities). The trial court did not abuse its discretion by concluding that State's Exhibit 221 had relevance apart from character conformity.

Appellant also claims that State's Exhibit 221 should have been excluded because the prejudicial effect outweighed the probative value. Relevant evidence is generally admissible, but it is properly excluded under Rule 403[3] when its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R.EVID. 403; *Casey v. State*, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007). In keeping with the presumption of admissibility of relevant evidence, trial courts should favor admission in close cases. *Casey*, 215 S.W.3d at 879; *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex.Crim.App. 1991)(op. on reh'g). The term "probative value" refers to the inherent probative force of an item of evidence--that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation--coupled with the proponent's need for that item

---

[3] Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX.R.EVID. 403.

of evidence. *Casey*, 215 S.W.3d at 879; *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex.Crim.App. 2006). When conducting the balancing test under Rule 403, the trial court determines whether the probative value of the evidence is substantially outweighed by one of the following countervailing considerations listed in the rule. *Casey*, 215 S.W.3d at 879. A trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641-42.

State's Exhibit 221 had substantial probative value because it strongly tended to prove one of the elements of Counts 2 and 3, namely, that Appellant acted with intent to participate in a criminal street gang. For this same reason, the State had a considerable need for this evidence. Any potential to create undue prejudice would have been counteracted by the trial court's limiting instruction which restricted the jury's consideration of the gang activity evidence to the intent element of Counts 2 and 3. We conclude that the trial court did not abuse its discretion by overruling Appellant's objections and admitting State's Exhibit 221. We overrule Issue Three and affirm the judgment of the trial court.

October 12, 2011

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, J., and Chew, C.J. (Senior)

(Do Not Publish)